UNITED STATES of America,
Plaintiff–Appellee,

v.

Juan Carlos BAUTISTA–AVILA,
Defendant–Appellant.

UNITED STATES of America,
Plaintiff–Appellee,

v.

Gabriel FIGUEROA–LEVYA,
Defendant–Appellant.

UNITED STATES of America,
Plaintiff–Appellee,

v.

Jorge ARMENTA–ESTRADA,
Defendant–Appellant.

Nos. 92–10447, 92–10450 and 92–10454.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 16, 1993.

Decided Oct. 5, 1993.

Donald J. Green, Las Vegas, NV, for defendant-appellant Bautista–Avila.

Martin R. Boyers, Las Vegas, NV, for defendant-appellant Figueroa–Levya.

Douglas C. Crawford, Las Vegas, NV, for defendant-appellant Armenta–Estrada.

John E. Ham and Thomas M. O'Connell, Asst. U.S. Attys., Las Vegas, NV, for plaintiff-appellee.

Before: FAIRCHILD *, BEEZER, and WIGGINS, Circuit Judges.

WIGGINS, Circuit Judge:

Defendants Juan Carlos Bautista–Avila, Gabriel Figueroa–Levya, and Jorge Armenta–Estrada appeal their convictions for conspiracy and possession with intent to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1) & 846. We have jurisdiction over their timely appeals pursuant to 28 U.S.C. § 1291. We reverse the convictions of Bautista–Avila and Figueroa–Levya and remand to the district court for a hearing to set bail and conditions pending further proceedings. We affirm the conviction of Armenta–Estrada.

## I. Facts

As with all drug conspiracies, the facts of this case are voluminous, involving various phone calls and sundry meetings between the principal parties, DEA Agent Delgado, Jose Trinidad Quiroz–Sanchez, and Armenta–Estrada. Briefly, those facts demonstrate that Quiroz–Sanchez and Armenta–Estrada agreed to sell to Agent Delgado 100 kilograms of cocaine, 24.5 grams of which would be sold first as a pre-deal "test" of the parties. Ultimately, Quiroz–Sanchez instructed

* Hon. Thomas E. Fairchild, Senior United States Circuit Judge for the Seventh Circuit, sitting by designation.

Armenta–Estrada to take Agent Delgado to Motel 6 Room #1032 to consummate the deal. Previously that day, DEA agents had observed Quiroz–Sanchez and Armenta–Estrada visit Jose Luis Ibarra–Velasquez and Figueroa–Levya at the same room. The DEA agents also observed two cars, a black Volkswagen Jetta and a yellow Ford Granada parked directly in front of the room. It was later revealed that these cars had entered the United States at Calexico, CA, one minute apart on the previous night.

Upon arriving at the Motel 6 with Agent Delgado, Armenta–Estrada unlocked the Ford Granada and proceeded to remove the dashboard, apparently to retrieve hidden cocaine. Immediately thereafter, a bust signal was given, Armenta–Estrada was arrested, and a search of the dashboard revealed 24 kilograms of cocaine. DEA Agents Ramirez and McConnell then entered Room #1032 and arrested Bautista–Avila, Figueroa–Levya, and Ibarra–Velasquez.

Bautista–Avila, Figueroa–Levya, and Armenta–Estrada were indicted, tried, and convicted. They now appeal, Bautista–Avila and Figueroa–Levya primarily on grounds of insufficiency of the evidence, and Armenta–Estrada on grounds that his post-arrest confession was coerced and that his *Miranda* waiver was not voluntary or knowing and intelligent.

## II. Discussion

### A. *Sufficiency of the Evidence*

Bautista–Avila and Figueroa–Levya challenge on sufficiency of the evidence grounds their convictions for conspiracy and possession with intent to distribute cocaine. In considering a challenge to the sufficiency of the evidence, we consider "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *see also United States v. Bishop,* 959 F.2d 820, 829 (9th Cir.1992).

### 1. *Conspiracy to Distribute Cocaine*

Defendants Bautista–Avila and Figueroa–Levya do not challenge the existence of a conspiracy to distribute cocaine in this case. Instead, they contend that the government failed to establish beyond a reasonable doubt their connection to the conspiracy involving Quiroz–Sanchez and Armenta–Estrada. We agree.

■ "Once a conspiracy exists, evidence establishing beyond a reasonable doubt defendant's connection with the conspiracy, even though the connection is slight, is sufficient to convict defendant of knowing participation in the conspiracy." *United States v. Penagos,* 823 F.2d 346, 348 (9th Cir.1987); *see also United States v. Litteral,* 910 F.2d 547, 550 (9th Cir.1990). "Evidence has to be produced to show that [Bautista–Avila and Figueroa–Levya] had *knowledge* of the conspiracy and acted in furtherance of it. Mere casual association with conspiring people is not enough." *United States v. Cloughessy,* 572 F.2d 190, 191 (9th Cir.1977) (emphasis added).

■ The government offered no direct evidence, such as admissions or fingerprints, connecting Bautista–Avila and Figueroa–Levya to the conspiracy. Neither Bautista–Avila nor Figueroa–Levya was present at or involved with any of the various meetings and sundry phone calls between the DEA, Quiroz–Sanchez, and Armenta–Estrada. Moreover, neither Bautista–Avila nor Figueroa–Levya was involved with the procurement or attempted transfer of the cocaine from Quiroz–Sanchez and Armenta–Estrada to Agent Delgado on the day that the arrests in this case were made.

Nevertheless, the government contends that it showed that Bautista–Avila and Figueroa–Levya "had knowledge of the conspiracy and acted in furtherance of it" through its offer of circumstantial evidence. The most powerful evidence included in this offering includes evidence that Bautista–Avila and Figueroa–Levya entered the United States in the black Jetta only a minute apart from the yellow Granada, the car that carried the cocaine into the United States; that, on the day the drug transaction was to take

place, Quiroz–Sanchez retrieved the keys to the yellow Granada from the Motel 6 room that Bautista–Avila had rented and where Bautista–Avila, Figueroa–Levya, and Ibarra–Velasquez were staying; that, upon his arrest, Armenta–Estrada confessed to DEA Agents that both the black Jetta and the yellow Granada were involved in the conspiracy; that Bautista–Avila admitted to giving Figueroa–Levya $5000 "to hold"; that Figueroa–Levya admitted to hiding the $5000 in the dashboard of the black Volkswagen Jetta; that $5000 was the exact amount Armenta–Estrada was to have received for his participation in the conspiracy; and that Bautista–Avila and Figueroa–Levya were arrested in the Motel 6 room where the drug transaction purportedly was to take place and directly in front of which the black Jetta and the yellow Granada were parked.[1]

Under the standard by which we review a challenge on sufficiency of the evidence grounds to a conviction, this is an extremely close case. Although we are loathe to reverse a trier of fact's conclusion that a defendant is guilty, based on the foregoing evidence, we simply cannot conclude that the government showed that Bautista–Avila and Figueroa–Levya "had knowledge of the conspiracy and acted in furtherance of it." Although Armenta–Estrada confessed that both the black Jetta and yellow Granada were part of the conspiracy, the government offered no evidence that either Bautista–Avila or Figueroa–Levya knew that the car in which they were riding was involved, especially considering that Armenta–Estrada subsequently denied that either Bautista–Avila or Figueroa–Levya were involved in the conspiracy. Moreover, the government offered no evidence that either Bautista–Avila or Figueroa–Levya knew that the Yellow Granada contained cocaine as it entered the United States or as it sat in front of their motel room. Finally, the government offered no evidence that either Bautista–Avila or Figueroa–Levya knew that the $5000 they were handling possibly could be involved in a drug conspiracy.

Admittedly, Bautista–Avila and Figueroa–Levya's conduct is consistent with that of people tangentially involved in a drug conspiracy. However, their behavior is also consistent with that of people who are unwittingly associating with individuals involved in a drug conspiracy. As we pointed out earlier, "mere casual association with conspiring people is not enough." Because we cannot conclude that the government has produced evidence that would allow a rational trier of fact to conclude beyond a reasonable doubt that the government's explanation of Bautista–Avila and Figueroa–Levya's actions, rather than their innocent explanation that they entered the United States solely to purchase a truck,[2] is the correct one, we must reverse their convictions for conspiracy to distribute cocaine. *See United States v. Vasquez–Chan*, 978 F.2d 546, 549 (9th Cir.1992) ("When there is an innocent explanation for a defendant's conduct as well as one that suggests that the defendant was engaged in wrongdoing, the government must produce evidence that would allow a rational jury to conclude beyond a reasonable doubt that the latter explanation is the correct one.").

### 2. Possession With Intent to Distribute Cocaine

■ Bautista–Avila and Figueroa–Levya also challenge on sufficiency of the evidence grounds their convictions for possession with intent to distribute cocaine. In support of their convictions, the government points only to the evidence that we detailed in section II.A.1., *supra.* However, as with the con-

---

1. The government also offered evidence that, after their arrests, Bautista–Avila and Figueroa–Levya attempted to disassociate themselves from members of the conspiracy; Armenta–Estrada made various misrepresentations, apparently to disassociate himself from Bautista–Avila and Figueroa–Levya; and Bautista–Avila and Figueroa–Levya made various attempts apparently to conceal their identity, including traveling in a borrowed car and renting the Motel 6 room under an assumed name.

2. After their arrest, both Bautista–Avila and Figueroa–Levya separately claimed that they had entered the United States to purchase a truck for Bautista–Avila. Codefendant Ibarra–Velasquez, who had entered the United States with Bautista–Avila and Figueroa–Levya, confirmed this claim.

spiracy convictions, we think this evidence is just too thin to support Bautista–Avila and Figueroa–Levya's convictions for possession with intent to distribute under a theory of vicarious or coconspirator liability, *see, e.g., Pinkerton v. United States*, 328 U.S. 640, 645–647, 66 S.Ct. 1180, 1183–84, 90 L.Ed. 1489 (1946), aiding and abetting under 18 U.S.C. § 2, *see, e.g., Vasquez–Chan*, 978 F.2d at 552, or dominion and control over the contraband, *see, e.g., United States v. Restrepo*, 930 F.2d 705, 709 (9th Cir.1991). Accordingly, we must reverse their convictions for possession with intent to distribute cocaine.[3]

### B. *Armenta–Estrada's Confession and Miranda Waiver*

■ First, Armenta–Estrada argues that his confession was not voluntary; second, he argues that his *Miranda* waiver was not voluntary or knowing and intelligent. We review de novo the district court's determination that a defendant's statement to law enforcement officers was voluntary, *see United States v. Leon Guerrero*, 847 F.2d 1363, 1365 (9th Cir.1988) (voluntariness of confession); *Collazo v. Estelle*, 940 F.2d 411, 415 (9th Cir.1991) (en banc) (voluntariness of *Miranda* waiver), *cert. denied*, —— U.S. ——, 112 S.Ct. 870, 116 L.Ed.2d 776 (1992), and for clear error the district court's determination that the defendant's *Miranda* waiver was knowing and intelligent. *See id.* at 416.

### 1. *Armenta–Estrada's Confession*

Armenta–Estrada argues that his confession was coerced by promises of leniency, threats regarding potential incarceration,[4] and admonitions regarding the integrity of the United States judicial system.[5] We disagree.

In determining the voluntariness of a confession, we consider "'whether, under the totality of the circumstances, the challenged confession was obtained in a manner compatible with the requirements of the Constitution....'" *Id.* at 415 (quoting *Miller v. Fenton*, 474 U.S. 104, 112, 106 S.Ct. 445, 450, 88 L.Ed.2d 405 (1985)). "A statement is involuntary if it is 'extracted by any sort of threats or violence, [or] obtained by any direct or implied promises, however slight, [or] by the exertion of any improper influence.'" *Leon Guerrero*, 847 F.2d at 1366 (quoting *Hutto v. Ross*, 429 U.S. 28, 30, 97 S.Ct. 202, 203, 50 L.Ed.2d 194 (1976), in turn quoting *Bram v. United States*, 168 U.S. 532, 542–43, 18 S.Ct. 183, 186–87, 42 L.Ed. 568 (1897)).

■ With respect to Agent Ramirez's alleged promise of leniency, this court has stated that "[a]n interrogating agent's promise to inform the government prosecutor about a suspect's cooperation does not render a subsequent statement involuntary, even when it is accompanied by a promise to recommend leniency or by speculation that cooperation will have a positive effect." *Id.* The evidence suggests that Agent Ramirez did not promise Armenta–Estrada anything, but merely offered that the court might favorably consider his cooperation. In fact, Armenta–Estrada admitted to his own expert witness that he had understood no promises to have been made. Under *Leon Guerrero*, Agent Ramirez's statement was acceptable.

■ With respect to Agent Ramirez's informing Armenta–Estrada of the potential penalty for the crime of which he was sus-

---

3. Because we reverse on sufficiency of the evidence grounds Bautista–Avila and Figueroa–Levya's convictions for conspiracy and possession with intent to distribute cocaine, we do not address their arguments that the government improperly failed to preserve material evidence or that the prosecution improperly exceeded the scope of rebuttal.

4. The evidence indicates that Agent Ramirez merely informed Armenta–Estrada that the crime of which he was suspected carried with it a penalty "in excess of ten years or more." Under the United States Sentencing Guidelines, this was an accurate statement. *See, e.g., United*

States Sentencing Commission, *Guidelines Manual*, § 2D1.1(a)(3), (c)(5) (Nov. 1991) (indicating that the crime of which Armenta–Estrada was suspected carried a base offense level of 34) and § 5A (indicating that a base offense level of 34 carries with it a minimum of 151–188 months of incarceration).

5. The evidence indicates that Agent Ramirez informed Armenta–Estrada that in the United States, as opposed to Mexico, "judges and attorneys could not be bribed and the charges could not be and would not be dropped."

pected, although this court has not specifically addressed the issue, *see United States v. Tingle*, 658 F.2d 1332, 1336 n. 3 (9th Cir. 1981), other courts have concluded that a "recitation of the potential sentence a defendant might receive" does not render a statement involuntary. *United States v. Paden*, 908 F.2d 1229, 1235 (5th Cir.1990), *cert. denied*, 498 U.S. 1039, 111 S.Ct. 710, 112 L.Ed.2d 699 (1991); *see also United States v. Davidson*, 768 F.2d 1266, 1271 (11th Cir. 1985) ("[A] 'truthful and noncoercive statement of the possible penalties which an accused faces' may be given to the accused without leading to an involuntary statement.") (quoting *United States v. Ballard*, 586 F.2d 1060, 1063 (5th Cir.1978)). We agree. Because Agent Ramirez's statement was such a recitation, *see* footnote 4, *supra*, it was acceptable.

■ Finally, with respect to Agent Ramirez's assurances regarding the integrity of the United States judicial system, because such a statement, even coupled with a promise of leniency and an indication of the potential penalty faced, is not "sufficiently compelling to overbear [Armenta–Estrada's] free will and rational intellect," *Leon Guerrero*, 847 F.2d at 1367, or "sufficiently compelling to overbear [Armenta–Estrada's] will in light of all attendant circumstances," *id.* at 1366, we affirm the district court's determination that Armenta–Estrada's confession was voluntary.

### 2. *Armenta–Estrada's Miranda Waiver*

Armenta–Estrada also argues that his alienage (Mexican) and mentality (sixth grade education) prevented him from making a voluntary and knowing and intelligent waiver of his *Miranda* rights. Although our determination that Armenta–Estrada's confession was voluntary is tantamount to a determination that his *Miranda* waiver was voluntary,[6] we must conduct a separate review to determine whether Armenta–Estrada's *Miranda* waiver was knowing and intelligent. *See Derrick*, 924 F.2d at 820. "Whether there has been a valid waiver depends on the totality of the circumstances, including the background, experience, and conduct of defendant." *United States v. Bernard S.*, 795 F.2d 749, 751 (9th Cir.1986).

The facts surrounding the alleged waiver are as follows. Agent Ramirez orally informed Armenta–Estrada of his *Miranda* rights in Armenta–Estrada's native tongue, Spanish; Agent Ramirez also provided Armenta–Estrada with a printed form that contained the *Miranda* warnings, which Armenta–Estrada signed; after receiving the *Miranda* warnings, Armenta–Estrada indicated to Agent Ramirez that he understood his rights and that he was nonetheless willing to speak with her about his involvement in the drug transaction; and, thereafter, Armenta–Estrada continued to speak with Agent Ramirez and answer her questions.

■ To rebut this evidence, Armenta–Estrada offered expert testimony that for Armenta–Estrada, who had no prior experience with the United States judicial system, had only a sixth grade Mexican education, and had been a manual laborer all his life, "there is almost an impossibility to grasp abstractions." Therefore, in the expert's opinion, Armenta–Estrada could not make a knowing and intelligent waiver.[7] Armenta–Estrada

---

**6.** *See, e.g., Derrick v. Peterson*, 924 F.2d 813, 820 (9th Cir.1990) ("The Supreme Court in [*Colorado v.*] *Connelly* [479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986)] held that '[t]here is obviously no reason to require more in the way of a "voluntariness" inquiry in the *Miranda* waiver context than in the Fourteenth Amendment confession context.' 479 U.S. at 169–70, 107 S.Ct. at 523. Thus, because we have already concluded that Derrick's confession was voluntary under the fourteenth amendment, we hold that his waiver of his *Miranda* rights was voluntary."), *cert. denied*, —— U.S. ——, 112 S.Ct. 161, 116 L.Ed.2d 126 (1991).

**7.** Armenta–Estrada complains that the district court erred in determining that Armenta–Estrada's expert was in no better position than the court to render a judgment that Armenta–Estrada could not grasp "abstractions" like his *Miranda* rights. However, Armenta–Estrada points to no case that requires that the district court give deference to the opinion of Armenta–Estrada's expert. In fact, the law is to the contrary. *See, e.g., United States v. Glover*, 596 F.2d 857, 865 (9th Cir.) ("As a trier of fact, however, the court is not required to 'count experts' in reaching its determinations. It need not be bound by expert [ ] testimony at all if other probative evidence points to a different result."), *cert. denied,*

also testified that, although he had indicated to Agent Ramirez at the time of the interrogation that he understood his *Miranda* rights, he had not really understood those rights all that well.

■ This court's prior law indicates to us that the problems of which Armenta–Estrada complains do not vitiate his voluntary *Miranda* waiver, especially considering that he indicated that he understood his rights after they were explained to him. *See, e.g., Bernard S.,* 795 F.2d at 752 ("Most importantly, after Bedford explained each of his rights to him in English, appellant stated that he understood his rights."); *United States v. Heredia–Fernandez,* 756 F.2d 1412, 1415–16 (9th Cir.) ("Heredia read the form describing his *Miranda* rights and claimed to understand these rights, subsequently signing the waiver when asked if he was willing to do so. He later said he remembered and still understood his rights, and indicated that he did not wish to have them read to him. He appeared to understand all that was taking place."), *cert. denied,* 474 U.S. 836, 106 S.Ct. 110, 88 L.Ed.2d 90 (1985); *United States v. Martinez,* 588 F.2d 1227, 1234–35 (9th Cir.1978) (defendant understood and knowingly waived his rights, primarily because he appeared to understand them as they were read, because he signed a written Spanish-language waiver form, and because he continued to answer questions put to him by the same Mexican-accented officer who read him the rights form). Thus, we affirm the district court's determination that Armenta–Estrada's *Miranda* waiver was knowing and intelligent.

### III. Conclusion

Because the evidence is insufficient to support Bautista–Avila and Figueroa–Levya's convictions for conspiracy and possession with intent to distribute cocaine, those convictions are REVERSED. We remand to the district court for a hearing to set bail and conditions pending further proceedings. Because Armenta–Estrada's confession was voluntary and his *Miranda* waiver was voluntary and knowing and intelligent, his conviction for conspiracy and possession with intent to distribute cocaine is AFFIRMED. The

mandate shall issue immediately upon the filing of the opinion.

444 U.S. 860, 100 S.Ct. 124, 62 L.Ed.2d 81    (1979).