35 F.3d 573
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Kuk Mo YANG, Defendant-Appellant.
 No. 94-50025.
 United States Court of Appeals, Ninth Circuit.
 Submitted Aug. 23, 1994.*
Decided Aug. 30, 1994.
 
 Before: WALLACE, Chief Judge, HUG and RYMER, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Kuk Mo Yang appeals his conviction following a conditional guilty plea to possession of goods stolen from foreign commerce in violation of 18 U.S.C. Sec. 659. Yang contends the district court erred by denying his motion to suppress post-arrest statements because (1) law-enforcement officers lacked probable cause to arrest him and (2) he did not voluntarily waive his Miranda rights.[1] We have jurisdiction under 28 U.S.C. Sec. 1291, and we affirm.
 
 
 3
 We review de novo both the district court's denial of a motion to suppress evidence, and its determination regarding the existence of probable cause for a warrantless arrest. United States v. Valencia, 24 F.3d 1106, 1108 (9th Cir.1994). We review for clear error both the district court's credibility determinations and factual findings. United States v. Oba, 978 F.2d 1123, 1125 (9th Cir.1992). We review de novo the district court's ruling that a defendant voluntarily waived his Miranda rights. United States v. Bautista-Avila, 6 F.3d 1360, 1364 (9th Cir.1993).
 
 
 4
 * Probable Cause
 
 
 5
 Yang contends that his actions prior to his arrest were consistent with innocent conduct and, therefore, were insufficient to establish probable cause to arrest him. We disagree.
 
 
 6
 Probable cause exists when the facts and circumstances known to the arresting officers at the time of the arrest are sufficient to lead a prudent person to believe that the suspect has committed or is committing a crime. Valencia, 24 F.3d at 1108. The court may consider the experience and expertise of officers involved in the investigation and arrest. United States v. Hoyos, 892 F.2d 1387, 1392 (9th Cir.1989), cert. denied, 498 U.S. 825 (1990). "Thus, seemingly innocent conduct may provide the basis for probable cause when viewed in light of all of the information known at the time of the arrest." United States v. Garza, 980 F.2d 546, 550 (9th Cir.1992). Probable cause may be based upon the collective knowledge of all the investigating officers "and all of the reasonable inferences that may be drawn therefrom." Garza, 980 F.2d at 550.
 
 
 7
 Here, the following facts were adduced by the declarations and testimony of Federal Bureau of Investigation (FBI) Special Agent Penney Smith and Los Angeles Deputy Sheriff John Langley at the suppression hearing. On June 6, 1993, a semi-truck, carrying 22,000 pairs of Bugle Boy jeans, was hijacked in Simi Valley, California. The driver described the hijackers as Hispanic males. On June 14, 1993, Special Agent Smith discovered a pair of Bugle Boy jeans containing the style number from the stolen shipment. The man who possessed the jeans agreed to put law-enforcement officers in touch with the person from whom he obtained the jeans--an individual named "Larami."
 
 
 8
 FBI Special Agent Doug Seibert began negotiating a potential purchase of Bugle Boy jeans with Larami. Larami informed Seibert that he was relaying demands from the person in possession of the Bugle Boy jeans. Seibert agreed to purchase approximately 20,000 pairs of Bugle Boy jeans at $7.00 a pair. The purchase price was considerably below the wholesale price for the jeans.
 
 
 9
 On June 16, 1993, Larami informed Seibert that an Asian male had possession of the Bugle Boy jeans, the Asian male wanted to sell the jeans in a series of deliveries, and that Seibert would not be permitted to see the place where the jeans were being stored. Larami arranged a meeting between Seibert and the seller at Larami's business establishment in Los Angeles. Larami further instructed Seibert to bring a truck and cash only for the jeans.
 
 
 10
 On June 17, 1993, Seibert arrived at Larami's business establishment in a truck. Thereafter, an Asian male, driving a grey Dodge van and wearing a red shirt, arrived at the meeting site. Surveillance officers determined that the van was registered to Yang. Larami introduced Seibert to Yang, who called himself "Tony." Yang told Seibert that the truck was too small and, to complete the Bugle Boy jeans deal, Seibert needed a bigger truck. Seibert left and returned with a bigger truck.
 
 
 11
 Yang took the keys to the truck and drove away to a downtown Los Angeles storage facility. Approximately fifteen minutes later, a Hispanic male drove the truck away from the downtown facility to a self-storage facility in Huntington Park, California. Four men proceeded to load boxes of jeans onto the truck. Law-enforcement officers detained the men and determined that the boxes bore purchase orders from the stolen Bugle Boys shipment.
 
 
 12
 Based upon statements from the detained men and a beeper call from Yang to the men, the officers determined that Yang was waiting for the truck to be returned to him at the downtown Los Angeles storage facility. When officers returned to the downtown facility, Yang, who was still wearing a red shirt, attempted to drive away. Officers performed a traffic stop and arrested Yang.
 
 
 13
 It is immaterial that some of Yang's actions, if reviewed separately, might be consistent with innocence. See Hoyos, 892 F.2d at 1393. The above facts, taken together, would lead a prudent person to believe that Yang was involved in the sale of stolen goods. The collective experience and knowledge of the officers, combined with Yang's demands and actions, amply support the district court's finding of probable cause to arrest Yang. See Valencia, 24 F.3d at 1108; Garza, 980 F.2d at 550.
 
 II
 Miranda Waiver
 
 14
 " 'Whether there has been a valid waiver depends on the totality of the circumstances, including the background, experience, and conduct of defendant.' " Bautista-Avila, 6 F.3d at 1365 (quoting United States v. Bernard S., 795 F.2d 749, 751 (9th Cir.1986)).
 
 
 15
 Yang contends that he did not voluntarily and knowingly waive his Miranda rights, and that the law-enforcement officers' testimony describing his interrogation was not credible.
 
 
 16
 The declaration and testimony of Deputy Sheriff Chae Hun Sung and Special Agent Smith revealed the following facts: Deputy Sung orally informed Yang of his Miranda rights in Yang's native language, Korean; Deputy Sung translated from a standard waiver form which contained the Miranda warnings; Yang indicated to Deputy Sung that he understood his rights; Yang signed the form and agreed to talk; Yang neither requested an attorney nor stated a desire to remain silent; no officer forced or threatened Yang to make oral or written statements; and, thereafter, Yang admitted his involvement in the Bugle Boys jeans transaction, including his knowledge that the jeans were stolen.
 
 
 17
 To contradict this evidence, Yang stated that upon his arrival at the sheriff's station, officers forced him to sign an unknown piece of paper. Yang further indicated that, due to the officers' intimidation, he signed the paper. He neither recalls being read his rights nor waiving them. Finally, defense counsel pointed out that the waiver form indicated that, following the question "Do you want an attorney present during the time we talk to you?," the "Yes" answer was circled. Deputy Song testified that the "Yes" was erroneously circled because he recalled Yang verbally stating he did not want an attorney.
 
 
 18
 In its written findings, the district court accepted Deputy Song's testimony and rejected Yang's version of the facts. Respecting the role of the trier of fact, we cannot say the district court clearly erred by finding Deputy Song more credible, and disbelieving the testimony of Yang. See United States v. Soares, 998 F.2d 671, 674 (9th Cir.1993), cert. denied, 114 S.Ct. 927 (1994); see also United States v. Vasquez, 858 F.2d 1387, 1391 (9th Cir.1988) (district court in unique position to observe the demeanor of both the defendant and law-enforcement officer), cert. denied, 488 U.S. 1034 (1989), and cert. denied, 489 U.S. 1029 (1989). Accepting Deputy Song's version of the facts, we conclude that the district court properly determined that Yang understood and validly waived his Miranda rights. See Bautista-Avila, 6 F.3d at 1366; Bernard S., 795 F.2d at 752-53.
 
 
 19
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Miranda v. Arizona, 384 U.S. 436 (1966)