39 F.3d 1190
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Hilario ORTIZ-DELGADO, Defendant-Appellant.
 No. 93-10750.
 United States Court of Appeals, Ninth Circuit.
 Submitted Oct. 6, 1994.*
Decided Oct. 24, 1994.
 
 Before: GOODWIN, O'SCANNLAIN, and KLEINFELD, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Hilario Ortiz-Delgado appeals his conviction for conspiracy to possess a controlled substance with intent to distribute in violation of 21 U.S.C. Sec. 846 and for possession of a controlled substance with intent to distribute in violation of 21 U.S.C. 841(a)(1). We affirm.
 
 
 3
 * Delgado contends that the evidence presented against him was insufficient to support his conspiracy conviction. In order to succeed, Delgado must show that after viewing the evidence in the light most favorable to the prosecution, no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. United States v. Bautista-Avila, 6 F.3d 1360, 1362 (9th Cir.1993).
 
 
 4
 Once the government has proven that a conspiracy exists, it need only prove beyond a reasonable doubt that the defendant had a slight connection to the conspiracy. United States v. Penagos, 823 F.2d 346, 348 (9th Cir.1987). However, the government must present evidence that the defendant had knowledge of the conspiracy and acted in furtherance of it. United States v. Esparza, 876 F.2d 1390, 1392 (9th Cir.1989); United States v. Cloughessy, 572 F.2d 190, 191 (9th Cir.1977).
 
 
 5
 There is more than enough evidence to prove that a conspiracy to distribute cocaine existed between Jose Altamirano and Jorge Mata. The government relies on the following evidence to establish Delgado's connection to that conspiracy. First, the cocaine was in Delgado's truck when the initial negotiating session between Eusebio Valles and Altamirano occurred. Delgado was seated in the driver's seat of the truck while Altamirano spoke to Valles about the cocaine and while Altamirano took the bag containing the cocaine from behind the passenger seat, placed it on the floor in front of the passenger seat and opened it up to give Valles a sample. Delgado said nothing during this exchange. Second, at about the time of that negotiating session, someone called Delgado's place of employment and stated that he would not be in to work because he had to go to the hospital. Third, government agents identified Delgado with Altamirano at a 7-Eleven store about 45 minutes after Altamirano had negotiated on the phone with Valles about the sale. During that phone conversation, Delgado appeared to be consulting with someone. Finally, Delgado waited with Altamirano and Mata for more than 20 minutes in front of the Lucky store where the drug sale was scheduled to occur. Delgado occasionally spoke with Altamirano and Mata while they waited; however, Delgado remained in front of the store while Mata and Altamirano met Valles in the parking lot and opened the car trunk to display the cocaine.
 
 
 6
 Delgado maintains that all of his actions were as consistent with innocent behavior as with criminal conduct. Delgado compares his case to a number of cases where the Ninth Circuit found insufficient evidence for a conspiracy conviction and claims that the government presented more evidence against these defendants than it has against him. We disagree. In none of the cases that Delgado cites did the government produce evidence establishing that the defendant both knew of the conspiracy and acted to further it.
 
 
 7
 In United States v. Penagos, 823 F.2d 346 (9th Cir.1987), Reinaldo Guarin agreed to deliver ten kilograms of cocaine to an undercover narcotics agent. Guarin removed two boxes from the Chevrolet he was driving and took the boxes inside an apartment complex. Two hours later, Pedro Gonzalez arrived at the apartment complex in a Plymouth. Defendant Penagos then came out of the complex with Guarin and Gonzalez. Guarin carried a box which he placed in the trunk of the Chevrolet. He then transferred two objects from the trunk of the Chevrolet into the trunk of the Plymouth. During the transfer, the defendant stood nearby and appeared to be looking up and down the street. Gonzalez then reentered the apartment complex and came out carrying another box which he placed behind the driver's seat of the Chevrolet. The boxes turned out to contain cocaine, and Gonzalez delivered two such boxes before he returned to the apartment building.
 
 
 8
 Next, Guarin drove the Plymouth, with the defendant as a passenger, to Denny's restaurant. Guarin and the defendant entered Denny's but emerged only three minutes later with Edgar Salazar. The three men drove to the gas station parking area next door. Salazar emerged after a brief interval carrying a brown paper bag containing cocaine. Salazar placed the bag in his own car. On their way back to the apartment complex, Guarin and the defendant stopped and spent approximately 45 to 60 minutes placing and receiving calls at public telephones. One of the men wore a telephone pager. Guarin and the defendant then went back to the apartment complex. They were arrested in apartment 301, where the police found four telephone pagers. In apartment 305, police found a box containing cocaine. A similar box of cocaine was also found in the trunk of the Plymouth. Id. at 347-48. On these facts, this court held that the government had not produced sufficient evidence for a conspiracy conviction. Although the circumstantial evidence was great, the government never proved that the defendant had any idea that the boxes contained cocaine, nor did they show that the defendant did anything to further the conspiracy.
 
 
 9
 In United States v. Bautista-Avila, 6 F.3d 1360 (9th Cir.1993), Bautista-Avila and Figueroa-Levya challenged their conspiracy conviction on sufficiency grounds. Quiroz-Sanchez and Armenta-Estrada had agreed to sell 100 grams of cocaine to DEA Agent Delgado. Delgado was to go to Motel 6 room 1032 to consummate the sale. Earlier that day, DEA agents had observed Quiroz-Sanchez and Armenta-Estrada visit Figueroa-Levya in room 1032. They also observed a black Volkswagen Jetta and a yellow Ford Granada parked directly in front of the room. When Agent Delgado arrived to consummate the sale, Armenta-Estrada unlocked the Granada and removed the dashboard where the cocaine was hidden. After arresting Armenta-Estrada, police found Bautista-Avila and Figueroa-Levya in room 1032 and arrested them as well.
 
 
 10
 The court held that the following evidence was insufficient to convict Bautista-Avila and Figueroa-Levya of conspiracy. Bautista-Avila and Figueroa-Levya entered the United States in the Jetta just one minute apart from the Granada, the car that carried the cocaine into the country. On the day of the drug sale, Quiroz-Sanchez retrieved the keys to the Granada from the motel room that Bautista-Avila had rented and where Bautista-Avila, Figueroa-Levya, and another man were staying. Upon his arrest, Armenta-Estrada confessed that both the Jetta and the Granada were involved in the conspiracy. Bautista-Avila admitted giving Figueroa-Levya $5000 "to hold." Figueroa-Levya admitted hiding the money in the dashboard of the Jetta, and $5000 was the exact amount that Armenta-Estrada was to have received for his participation in the conspiracy. Finally, Bautista-Avila and Figueroa-Levya were arrested in the motel room where the drug transaction was to take place and directly in front of where the Jetta and Granada were parked. Nonetheless, the court held that the government had produced no evidence that Bautista-Avila or Figueroa-Levya had knowledge of the conspiracy and acted in furtherance of it. Id. at 1363.
 
 
 11
 In United States v. Lopez, 625 F.2d 889 (9th Cir.1990), Moses, an undercover agent, had purchased small quantities of heroin from Federico. When Moses inquired about a larger purchase, Federico told him that he could arrange the deal through his "connections in Santa Ana." When Moses subsequently called Federico, Federico told Moses that the people from Santa Ana would be at his house the next day, so Moses should come to town and call Federico from a store nearby where they would conduct the transaction. Moses testified that Federico always referred to his connection in Santa Ana as "she" and that on the day before the transaction was to occur, Federico told Moses that there would be two people from Santa Ana at his house and that they were the owners of the heroin.
 
 
 12
 At the store the next day, Moses and another agent negotiated with Federico and his brother Alberto. Federico said he would return soon, possibly with the owners of the heroin who were "relatives." Federico emphasized that everyone involved was "family." Federico and Alberto then returned with one Camerina. Camerina said that she was "responsible" for the heroin, and she tried to persuade Moses to come to Federico's house to consummate the transaction, but Moses insisted that they bring back some samples before he would follow them to Federico's house.
 
 
 13
 Camerina, Federico, and Alberto returned to Federico's house and went inside along with three others who were on the front lawn. Soon after, the defendant, who lived in Santa Ana but who was not related to Federico, came out into the front yard, walked around awhile and then went back in. Then Camerina, Federico, and Alberto came out and got into one car, while Enrique Lopez Beltran, Margarita Garcia de Parra, and the defendant got into another car. The defendant was in the passenger seat. Margarita was carrying a purse which was large and full and she was "clutching it with both hands." It was later found to contain heroin. Both cars arrived and parked within 30-40 yards from each other. After Federico gave Moses the sample of heroin, police arrested the occupants of both cars. The defendant was found with no drugs or weapons on his person and he had only $42. Under the driver's seat of the car in which he was riding, however, police found $3250. Upon his arrest, the defendant stated that he was partially crippled from an auto accident and, had it not been for his disability, he would not have been caught. He also remarked, "I knew what was going down." Id. at 891-95. The court nevertheless found that the evidence against the defendant was insufficient because there was no evidence that he did anything to further the object of the conspiracy.
 
 
 14
 While in all of the above cases there was a great deal of circumstantial evidence linking the defendants to the conspiracies, in each case the government failed to produce evidence specifically establishing that the defendants knew of the conspiracy and acted to further it. In the instant case, by contrast, the government has produced evidence of both elements. The government produced evidence of knowledge of the conspiracy by showing (1) that the cocaine was in Delgado's car, see United States v. Sutton, 446 F.2d 916, 920 (9th Cir.1971) (sufficient evidence to establish knowledge of the conspiracy because appellant was in possession of and driving the automobile in which the marijuana was concealed), and (2) that Delgado was present in the car while Altamirano was showing Valles the cocaine and negotiating over it. In addition, the government produced evidence that Delgado acted to further the conspiracy by showing that Delgado provided Altamirano with the transportation necessary to consummate the sale. Although the evidence may be circumstantial, items of circumstantial evidence must be viewed collectively, not in isolation. United States v. Calaway, 524 F.2d 609, 612 (9th Cir.1975). Here, a rational jury could have found that the evidence viewed in the aggregate was sufficient to connect Delgado to the conspiracy.
 
 II
 
 15
 Delgado also contends that the district court erred in admitting Altamirano's hearsay statements. We reject this contention.
 
 
 16
 Federal Rule of Evidence 801(d)(2)(E) provides that "a statement is not hearsay if ... the statement is offered against the party and is ... a statement by a coconspirator of a party during the course and in furtherance of the conspiracy." Judge George admitted Altamirano's statements, finding that the "requirement of a conspiracy has been satisfied and the slight connection of the defendant has been established." We review a district court's decision to admit evidence of a coconspirator's statement for abuse of discretion. United States v. Peralta, 941 F.2d 1003, 1006 (9th Cir.1991).
 
 
 17
 Before admitting a statement of a coconspirator into evidence, the government must establish by a preponderance of evidence that there was a conspiracy involving the declarant and the nonoffering party, and that the statement was made during the course and in furtherance of the conspiracy. Bourjaily v. United States, 483 U.S. 171, 175 (1987). Delgado maintains that the district court applied the wrong standard to the evidence. He asserts that the government did not show his involvement with the conspiracy by a preponderance of the evidence; rather, "the court believed that all that need be shown by the Government is a 'minimal contact' with the defendant."
 
 
 18
 Delgado misapprehends the district court's ruling, however. The district court's "slight connection" language referred to the amount of involvement that the government must show in order for the statements to be admissible. See United States v. Crespo de Llano, 838 F.2d 1006, 1017 (9th Cir.1987) ("Once a conspiracy has been shown, the prosecution need only present slight evidence connecting the defendant to the conspiracy" in order to admit the coconspirator's statements). It did not refer to the standard the judge applied in reaching the conclusion that the slight connection had been established. Although the district judge did not explicitly state the standard, we have every reason to believe that he found that Delgado's slight connection to the conspiracy was established by a preponderance of the evidence. Because the record supports this finding, the district court did not abuse its discretion by admitting Altamirano's statements.
 
 III
 
 19
 Finally, Delgado contends that his conviction for possession of cocaine with intent to distribute is not supported by sufficient evidence. We disagree. Once a jury finds Delgado guilty of the conspiracy on sufficient evidence, it may also find him guilty of the substantive violations committed by the conspiracy. Pinkerton v. United States, 328 U.S. 640 (1945). See United States v. Torres-Rodriguez, 930 F.2d 1375, 1382 (9th Cir.1991); United States v. Douglass, 780 F.2d 1472, 1475-76 (9th Cir.1986). Because we find that there is sufficient evidence to connect Delgado to the conspiracy, we reject Delgado's contention that his conviction for possession is unsupported.
 
 
 20
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for submission on the record and briefs and without oral argument. Fed.R.App.P. 34(a), Ninth Circuit R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit R. 36-3