89 F.3d 847
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Ignacio Acosta TORRES, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Benjamin CORRAL, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Francisco Carbajal ARIAS, Defendant-Appellant.
 Nos. 95-10245, 95-10248, 95-10260 and 95-10252.
 United States Court of Appeals, Ninth Circuit.
 Submitted May 16, 1996.*
Decided June 25, 1996.
 
 1
 Before: PREGERSON and TROTT, Circuit Judges, and EZRA, District Judge**.
 
 
 2
 MEMORANDUM***
 
 
 3
 The appellants challenge their convictions for playing various roles in a criminal enterprise devoted to the manufacture and distribution of methamphetamine.
 
 
 4
 We affirm.
 
 
 5
 * Ignacio Acosta-Torres was charged in a second superseding indictment with conspiring to manufacture, distribute, and possess methamphetamine with intent to distribute (Count II), distributing methamphetamine (Count III), and possessing methamphetamine with intent to distribute (Count IV). He argues: 1) there was insufficient evidence to support conviction on any of these three counts; 2) the district court should have granted him a new trial; and 3) the district court should have granted severance.
 
 
 6
 None of these arguments has merit.
 
 A. Sufficiency of the evidence
 1. Count II
 
 7
 Count II charged six codefendants, including Torres, with participating in a conspiracy beginning no later than August 28, 1993 and lasting until March 8, 1994 to manufacture, distribute, and possess with intent to distribute methamphetamine. Torres does not deny the existence of the conspiracy. Rather, he argues that the government has failed to produce substantial evidence that he knowingly participated in it.
 
 
 8
 To prove conspiracy in violation of 21 U.S.C. § 846, the government need only show (1) an agreement to commit a crime, and (2) knowledge of the conspiracy's objectives and an intent to further them. United States v. Gil, 58 F.3d 1414, 1423 n. 5 (9th Cir.), cert. denied, 116 S.Ct. 430 (1995). "Once a conspiracy exists, evidence establishing beyond a reasonable doubt defendant's connection with the conspiracy, even though the connection is slight, is sufficient to convict defendant of knowing participation in the conspiracy." United States v. Bautista-Avila, 6 F.3d 1360, 1362 (9th Cir.1993) (citations and quotation marks omitted). However, to support conviction, "[e]vidence has to be produced to show that [the person charged as a co-conspirator] had knowledge of the conspiracy and acted in furtherance of it. Mere casual association with conspiring people is not enough." Id. (citations omitted).
 
 
 9
 The government details the evidence supporting Torres' connection to the conspiracy at some length. Highlights include: 1) Torres' role ferrying Ayon, Franco, and Arias from place to place in furtherance of the February 24 deal, RT 37-42, 79-85; 2) Ayon's testimony that Torres and Franco said during the course of these trips that larger deals could be made in the future if all went well, RT 81; 3) Ayon's testimony that Torres said that the methamphetamine would be high quality because it was made on site at the ranch, RT 117; 4) Ayon's testimony that Torres was present at the weighing of the methamphetamine for the February 24 deal at the lab site, RT 82-85; 5) Ayon's testimony that Franco and Torres said that Torres cooked methamphetamine, RT 88, 101, 105, 112-14; 6) Franco's March 8 statement that individuals at the ranch would only sell methamphetamine to Agent Rodriguez if Torres were present and that Rodriguez had to wait for Torres to arrive before going forward with the deal, RT 48; 7) Torres' subsequent arrival at the parking lot where Agent Rodriguez waited for him, RT 49; and 8) Codefendant Ramiro Ramirez's testimony that he witnessed Torres participate in methamphetamine cooks two or three times, RT 364.
 
 
 10
 In short, ample evidence supported finding Torres sufficiently connected with the conspiracy to justify conviction.
 
 2. Count III
 
 11
 Count III charged Torres with aiding and abetting distribution of methamphetamine on February 24, 1994. Torres argues that the evidence shows merely that he drove codefendant Franco to the scene of his drug negotiations with Agent Rodriguez and that these negotiations took place outside the car, while Torres was behind the wheel. He contends he was not a party to the deal. Thus, Torres was merely present at the scene of a crime, which is insufficient for conviction.
 
 
 12
 "Aiding and abetting ... makes a defendant a principal when he consciously shares in any criminal act whether or not there is a conspiracy." United States v. Sanchez-Mata, 925 F.2d 1166, 1168-69 (9th Cir.1991) (citations omitted). "A defendant need not actually sell drugs to aid and abet their distribution.... Rather, it is enough that the defendant associate with the criminal venture, participate in it, and seek by actions to make it succeed." United States v. Savinovich, 845 F.2d 834, 838 (9th Cir.) (citations omitted), cert. denied, 488 U.S. 943 (1988).
 
 
 13
 The evidentiary discussion in the preceding section indicates that there was ample evidence from which a jury could conclude that Torres ferried people and drugs from place to place on February 24, 1994 with the intent to further the drug deal.
 
 3. Count IV
 
 14
 Although Torres states that insufficient evidence supported his conviction on this count, he does not support this claim with argument. The government argues that on March 8 Torres aided and abetted possession with intent to distribute. The evidence supporting the government includes: 1) on March 8, Franco agreed to sell ten pounds of methamphetamine from the Millwood Ranch to Agent Rodriguez; 2) Franco told Agent Rodriguez that Torres would come to drive them to the ranch, and the deal could not proceed without him present, RT 48; and 3) Torres subsequently arrived at the store where Agent Rodriguez was waiting to arrest him, RT 49.
 
 
 15
 This evidence was sufficient to support Torres' conviction on Count IV.
 
 B. Torres' motion for a new trial
 
 16
 Torres contends the district court should have granted him a new trial. He does not, however, cite to where in the record he moved for a new trial. The government contends he never made such a motion. The appellant has not rebutted this assertion, which appears to be correct. The district court could not grant a motion that Torres did not make.
 
 C. Torres' motion to sever
 
 17
 Torres moved for severance on October 7, 1994. At the close of all trial evidence, although he moved for a Rule 29 judgment of acquittal and a mistrial, he apparently did not renew his motion for severance. RT 1132-37. Failure to renew a motion to sever at the close of all evidence generally waives appellate review. United States v. Plache, 913 F.2d 1375, 1378 (9th Cir.1990).
 
 
 18
 Torres' brief does not make any attempt to excuse failure to renew the motion to sever or demonstrate that he falls into an exception to the general rule. Therefore, Torres waived review.
 
 II
 
 19
 Benjamin Corral was charged with and found guilty of the same conspiracy count (Count II, D.C. No. 94-5044 EDP) as Arias and Torres. He was also charged in a separate indictment (D.C. No. 94-5103 EDP) with conspiring to distribute methamphetamine (Count I) and possession of methamphetamine with intent to distribute (Count II). After the conclusion of the trial in No. 94-5044, Corral pled guilty pursuant to a plea agreement to the possession count in No. 94-5103. He argues: 1) there was insufficient evidence to convict him on the No. 94-5044 conspiracy count; 2) the district court should have granted him a new trial in No. 94-5044; and 3) the government breached its plea agreement in No. 94-5103 to recommend a two-point reduction in offense level for acceptance of responsibility and a downward departure.
 
 
 20
 We reject all of these arguments.
 
 
 21
 1. Sufficiency of the evidence on the conspiracy count
 
 
 22
 The government chose to argue this issue on the theory that Corral aided and abetted the Favela conspiracy.[1] To prove that he aided and abetted the conspiracy, the government had to prove that Corral "in some sort associate[d] himself with the venture, that he participate[d] in it as in something that he wish[ed] to bring about, that he [sought] by his actions to make it succeed." United States v. Sanchez-Mata, 925 F.2d 1166, 1169 (9th Cir.1991) (citations and quotation marks omitted).
 
 
 23
 Corral does not dispute the existence of the conspiracy. Rather, he argues that there is insufficient evidence he knowingly participated in the conspiracy. He contends the evidence merely proves that he once delivered freon (a legal chemical) to Ramirez and that there is no evidence he knew that the freon would be used for illegal purposes or that he delivered it during the course of the conspiracy.
 
 
 24
 As to the timing of the freon deliveries, Agent Rodriguez testified that Corral admitted to delivering freon roughly eight months before his arrest--which would be sometime around September or October 1993. RT 51. Agent Rodriguez also testified that Corral admitted that deliveries (though not made by him personally) had been made at least twice a month from approximately May 1993. RT 51-52. According to codefendant Ramirez, the last shipment from Corral came just the day before Ramirez's March 8, 1994 arrest. RT 367. Count II of No. 94-5044 charged a conspiracy that began no later than on or about August 28, 1993 and ended on or about March 8, 1994. Corral's activities clearly fell within this time period.
 
 
 25
 Corral's claim that he was ignorant of the purpose for which the freon was used is similarly flawed. Evidence from which the jury could conclude that Corral was not an innocent deliverer of legal freon included: 1) confidential informant Valenzuela's testimony that Corral offered to sell him various ingredients and equipment for the manufacture of methamphetamine, including ephedrine and "acid," RT 204[2]; and 2) codefendant Ramirez's testimony that he ordered from Corral not just freon but also "the gas [HC1], the red [red phosphorus] and the salt [caustic soda]," other ingredients required for methamphetamine manufacture, RT 343.
 
 
 26
 Sufficient evidence supported Corral's conviction for aiding and abetting the Favela conspiracy.
 
 B. Corral's motion for a new trial
 
 27
 A district court should only grant a motion for a new trial "in exceptional cases in which the evidence preponderates heavily against the verdict." United States v. Rush, 749 F.2d 1369, 1371 (9th Cir.1984).
 
 
 28
 Corral makes the same arguments for a new trial as he did on insufficiency of the evidence: 1) he did not know that any chemical deliveries were being put to illegal use; and 2) the government has not shown that any delivery took place during the life of the conspiracy. The discussion of the sufficiency of the evidence in the preceding section indicates that the district court correctly refused to grant Corral a new trial.
 
 C. The breach of plea agreement argument
 
 29
 Corral contends that the government breached its plea agreement in No. 94-5103 by failing to recommend a two-point reduction for acceptance of responsibility.[3] Corral filed objections to the PSR for failing to recommend this two-point reduction. CR 26 (No. 94-5103). The government responded that the plea agreement had merely been designed to ensure that Corral would not spend time in prison due to his No. 94-5103 conviction above and beyond the term he would serve due to his No. 94-5044 conviction. CR 242 at 2. Because Corral's offense in this latter case completely controlled the length of his sentence, the two-point reduction was not necessary. At the sentencing hearing, Corral renewed his request for the two-point reduction. SER Tab 1 at 3. The government recommended the court adopt the PSR. SER Tab 1 at 4. Corral did not object at the sentencing hearing to the government's failure to recommend the two-point reduction, nor has he cited to any portion of the record where he brought this issue to the attention of the district court.
 
 
 30
 This court generally will not review issues raised for the first time on appeal. This rule applies to defendant claims that the government has breached a plea agreement. United States v. Flores-Payon, 942 F.2d 556, 557 (9th Cir.1991). Corral does not mention this waiver problem, much less argue that his case falls into one of the narrow exceptions to the general rule. Therefore, this court will not reach Corral's argument that the government breached the plea agreement.
 
 III
 
 31
 Francisco Carbajal-Arias was convicted on the same three counts as Torres. His sole argument on appeal is the district court erred when it denied his motion for a new trial based on "new evidence" in a declaration which Torres made after his conviction.
 
 
 32
 "When a defendant who has chosen not to testify subsequently comes forward to offer testimony exculpating a codefendant, the evidence is not 'newly discovered.' " United States v. Diggs, 649 F.2d 731, 740 (9th Cir.1981), cert. denied, 454 U.S. 970, overruled on other grounds as noted in United States v. Ibarra-Alcarez, 830 F.2d 968, 973 n. 1 (9th Cir.1987); United States v. Reyes-Alvarado, 963 F.2d 1184, 1188 (9th Cir.), cert. denied, 506 U.S. 890 (1992).[4]
 
 
 33
 Torres apparently did not testify. His post-conviction declaration is therefore not newly discovered evidence under Ninth Circuit precedent. The district court was correct in concluding that Torres' declaration could not provide Arias with a basis for a new trial.
 
 
 34
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a) and Ninth Circuit Rule 34-4
 
 
 **
 The Honorable David A. Ezra, United States District Judge for Hawaii, sitting by designation
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Corral was not specifically charged with aiding and abetting in violation of 18 U.S.C. § 2 in Count II of the No. 94-5044 indictment. A jury may convict on an aiding and abetting theory even though it has not been charged in the indictment. Giraud v. United States, 348 F.2d 820, 822 (9th Cir.1965) (citing Nye & Nissen v. United States, 336 U.S. 613 (1949)), cert. denied, 382 U.S. 1015 (1966). In closing arguments, the government argued that Corral had aided and abetted the conspiracy, RT 1169, and the jury was instructed that it could use this theory with respect to any count in the indictment
 
 
 [2]
 Corral argues that Valenzuela's testimony is irrelevant as it related to statements made in May 1994, two months after the end of the conspiracy. Valenzuela's testimony is obviously relevant, however, to what Corral knew about manufacture of methamphetamine. A jury could infer from Corral's May familiarity with this process that he knew the end use for the chemicals sent to Ramirez
 
 
 [3]
 Corral also states that the government agreed to a downward departure from the mandatory minimum to 94 months imprisonment. The government states it made no such agreement. The plea agreement agrees with the government. CR 23 at 2 (No. 94-5103)
 
 
 [4]
 Arias argues that United States v. Panza, 612 F.2d 432, 441 (9th Cir.1979), cert. denied, 447 U.S. 925 (1980), supports the proposition that the district court could have considered a codefendant's post-conviction affidavit to be "newly discovered evidence." Panza had testified at his trial where he refused to identify "Number 1's identity," but, following sentencing, he filed an affidavit revealing who "Number 1" was. Tates based a motion for new trial on the affidavit. The court stated, "[b]ecause Panza refused to disclose Number 1's identity at trial we are hesitant to hold that the affidavit is not new evidence." 612 F.2d at 441. It went on to hold that the trial court did not abuse its discretion in rejecting the affidavit as not credible. Id
 Panza is distinguishable in that Panza testified at the trial. It is not authority for the proposition that a defendant who has not testified at trial may create "newly discovered evidence" by submitting after trial an affidavit exonerating a codefendant.