UNITED STATES of America, Plaintiff–Appellee,

v.

Carlos Arturo OCAMPO, Defendant–Appellant.

UNITED STATES of America, Plaintiff–Appellee,

v.

Jorge ARANGO, Defendant–Appellant.

UNITED STATES of America, Plaintiff–Appellee,

v.

Jerald James DONATO, Defendant–Appellant.

Nos. 89–50332, 89–50344, 89–50434.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 6, 1990.

Decided July 1, 1991.

Thomas V. Johnston, Encino, Cal., Steven E. Kreisberg, Coconut Grove, Fla., Roger L. Cossack, Santa Monica, Cal. (Joseph T. Vodnoy, Joseph F. Walsh, argued, Los Angeles, Cal.), for defendants-appellants.

Jeffrey C. Eglash, Asst. U.S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Before WALLACE, Chief Judge, O'SCANNLAIN and RYMER, Circuit Judges.

WALLACE, Chief Judge:

Ocampo, Donato, and Arango appeal from their convictions for possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1), and conspiracy, in violation of 21 U.S.C. § 846. Arango and Ocampo also appeal their sentences. The district court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction over these timely appeals pursuant to 28 U.S.C. § 1291. We reverse the conviction of Ocampo, affirm the conviction of Donato, and affirm both the conviction and sentence of Arango.

I

The police investigation began with a tip followed by surveillance. The initial focus of this investigation was a Santa Ana condominium (Irongate residence), where the police first observed Ocampo and his wife, coming and going in a Volkswagen Jetta. Nothing suspicious was observed initially, but over a week later, Ocampo arrived at the Irongate residence with a new companion, Arango. After a short stay, Arango left alone, driving the Dodge Aries in which he had arrived. The police followed.

Arango executed a number of counter-surveillance maneuvers. He changed lanes abruptly, entered a restaurant parking lot, and just sat, not in any parking space, watching traffic. When he reentered traffic, Arango drove to a hotel, where he made several telephone calls from a public telephone, notwithstanding that his car was equipped with a cellular phone. He then drove across the street and spent about a half-hour unobserved inside the lobby of a second hotel. Upon leaving the hotel, Arango drove one hundred feet to a different restaurant, where he remained for about one minute. The police recognized this activity as the placing and receiving of "beeper phone calls" intended to avoid a trace or tap.

This pattern of behavior continued for some time before the police noticed another vehicle, a Ford Aerostar van, which appeared to be driving in tandem with Arango's Dodge. The two cars traveled together on the freeway for approximately one hour, exited together, and stopped. Rodriguez and Uribe emerged from the van. Rodriguez and Arango shook hands, and

Rodriguez drove off in Arango's Dodge. Arango waited at a restaurant with Uribe.

Rodriguez shortly entered a residential neighborhood in Sepulveda, where he too began counter-surveillance driving. He made U-turns, drove up and down several streets, and stopped to observe passing traffic. He eventually made his way to a house (Sophia residence), which he entered by the front door. Five minutes later, he drove the Dodge from the driveway into the garage, and the garage door was closed. The Dodge reemerged with Rodriguez driving. Rodriguez traveled directly to where he had left Arango and Uribe, who were still waiting at the restaurant. After all three men entered their original vehicles, they were detained by the police. Donato was detained at the Sophia residence, and Ocampo was detained at the Irongate residence.

The police reported these events to a judge who issued a telephonic search warrant for the Sophia and Irongate residences, the Dodge Aries, and the Ford Aerostar van. The police found 76 kilograms of cocaine in the garage rafters of the Sophia residence. Inside the residence, the police found two scales, various vials, mannitol (a common "cutting agent"), wrapping and packaging papers, and two utility bills addressed to Donato at the Sophia residence. Donato had keys to the Sophia residence and a small amount of cocaine on his person.

The garage at the Irongate residence contained a Ford pickup truck. Inside the truck, secreted away in a hidden compartment, the police found 82 kilograms of cocaine wrapped in one-kilogram packages. Inside the residence, the police found a photo album of the Ocampo wedding, along with a beeper and two personal address books, though these latter items were not associated by the government with Ocampo. Ocampo had keys to the residence and the Volkswagen Jetta, but not to the truck. A single fingerprint belonging to Ocampo was found on the driver's side wing window of the pickup truck. It is not clear whether this fingerprint had been left from inside or outside the truck. The govern-

ment did not introduce evidence regarding ownership of the Irongate residence or the truck. Although clothing of the approximate size of Ocampo and his wife was found inside the condominium, no other evidence was introduced linking Ocampo to the residence or the truck.

The Dodge Aries contained 50 kilograms of cocaine wrapped in one-kilogram packages.

Ocampo, Donato, Arango, and Rodriguez were subsequently indicted. They waived their rights to a jury trial and, after a bench trial on stipulated facts, were convicted. The appeal of Rodriguez has been dismissed, and his conviction has become final. We now consider challenges raised by the remaining three defendants.

## II

■ Ocampo argues the evidence is insufficient to sustain his convictions. To evaluate his contention, we must determine, upon viewing the evidence in the light most favorable to the government, whether any rational trier of fact could have found the crimes' essential elements beyond a reasonable doubt. *Miller v. Vasquez*, 868 F.2d 1116, 1119 (9th Cir.1989).

### A.

■ The crime of possession with intent to distribute cocaine has three essential elements. The government must prove beyond a reasonable doubt that the defendant (1) knowingly, (2) possessed the cocaine, (3) with an intent to distribute it. *See United States v. Mora*, 876 F.2d 76, 77 (9th Cir. 1989); 21 U.S.C. § 841(a)(1). Possession of a large quantity of cocaine alone may be sufficient to infer both knowledge and intent. *United States v. Savinovich*, 845 F.2d 834, 838 (9th Cir.), *cert. denied*, 488 U.S. 943, 109 S.Ct. 369, 102 L.Ed.2d 358 (1988). The truck in the Irongate residence garage contained 82 kilograms of cocaine. From the possession of this large amount, the district court could have rationally inferred both knowledge and intent.

■ But these inferences depend, as does the conviction itself, on the govern-

ment's proof that Ocampo possessed the cocaine. Possession means dominion and control. *Id.* at 837. Possession may be proved circumstantially, by proof of exclusive dominion or of some special relationship to the cocaine or persons who directly control it. *Id.* It is not enough to show mere proximity to the drug or a defendant's presence on the property where it is located. *Id.*

■ The cocaine at the Irongate residence was found in a truck in the garage, hidden in a secret compartment forward of the truck's rear bumper. Ocampo was found inside the residence with his wife. While Ocampo had keys to the residence, as well as to the Volkswagen Jetta, he did not have keys to the truck. The sole evidence linking Ocampo to the truck was a fingerprint on the driver's side wing window. The government presented no evidence regarding the ownership of either the truck or the residence.

On stronger proof, the conviction might be sustained on Ocampo's connection to either the truck or residence. On these facts, however, neither connection is sufficient to show exclusive dominion over the cocaine or a special connectedness to it. Lacking keys or title to the truck, Ocampo was not shown to be its possessor. The mere fact that Ocampo once touched the truck, even assuming the fingerprint was imparted from inside the cab, is insufficient. Ocampo's connection to the residence is too attenuated to establish possession over the hidden contents of a vehicle in its garage. Thus, the government's proof of possession is insufficient. The conviction of Ocampo for possession with intent to distribute must be reversed.

### B.

■ Ocampo also contends that insufficient evidence supports his conviction of conspiracy in violation of 21 U.S.C. § 846. The government observes, correctly, that once a conspiracy is shown to exist, even a slight connection to the defendant will sustain his conviction. *See United States v. Meyers,* 847 F.2d 1408, 1413 (9th Cir.1988). Assuming the existence of a conspiracy,

the government recites two facts in support of this connection. First, as already described, Ocampo and his wife were present at the Irongate residence, where the truck in which the cocaine was hidden was parked in the garage. Second, Ocampo was seen with Arango at the Irongate residence preceding their arrests.

In *United States v. Ramirez,* 880 F.2d 236 (9th Cir.1989), we reversed a conspiracy conviction under similar circumstances. Ramirez was a cocaine user in a house where a large amount of cocaine and a large amount of cash were not in view but were easily accessible. *Id.* at 238. Moreover, Ramirez had probably spent the previous night in a bedroom containing a ledger of drug transactions. *Id.* He was apprehended while emerging from a bathroom in which cocaine and distribution materials were stored, but out of sight. *Id.* Absent some proof linking Ramirez to the illicit activity, of which there was none, his mere presence was insufficient to sustain the conviction. *Id.* at 239.

Like Ramirez, Ocampo was arrested in "extremely incriminating surroundings." *Id.* at 238 (quotation omitted). But like in *Ramirez,* the government here has failed to produce proof linking Ocampo to the illicit activity. Ocampo's mere presence at the Irongate residence, even with Arango, cannot sustain his conspiracy conviction.

Therefore, we reverse the conviction of Ocampo. We do not reach his other contentions of error.

### III

Arango and Donato challenge the admission of evidence obtained pursuant to the telephonic warrant. Arango curiously contends his *arrest* was not supported by probable cause, and therefore, he argues, the evidence seized contemporaneously with his arrest should have been suppressed. But his is not a case about search incident to arrest. The police had a search warrant, so the arrest is irrelevant to the search.

■ Therefore, we turn our attention to the only colorable search issue: whether

the search warrant was supported by probable cause. Probable cause exists when, considering the totality of the circumstances, " 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.' " *United States v. Rodriguez*, 869 F.2d 479, 484 (9th Cir.1989) *(Rodriguez)*, quoting *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983). This decision is made by the magistrate on the basis of practical, common-sense considerations. *Rodriguez*, 869 F.2d at 484. It will be overturned on appeal only if lacking a substantial basis. *Id.*

■ The events preceding the issuance of the warrant began with a tip. Acting on this tip, the police observed the following suspicious activity: counter-surveillance driving, tandem driving, a car switch, and numerous beeper phone calls. We have previously recognized that counter-surveillance driving and beeper phone calls are facts indicative of narcotics distribution. *See United States v. Hoyos*, 892 F.2d 1387, 1392–93 (9th Cir.1989) *(Hoyos)*, cert. denied, —— U.S. ——, 111 S.Ct. 80, 112 L.Ed.2d 52 (1990). We have also recognized that tandem driving, though oftentimes explicable on entirely innocent grounds, may likewise indicate criminal activity. *See United States v. Robert L.*, 874 F.2d 701, 704 (9th Cir.1989). Although Donato tenders an innocent explanation for each separate activity, his argument misses the point. "The fact that some of these acts, if reviewed separately, might be consistent with innocence is immaterial." *Hoyos*, 892 F.2d at 1393. Our review, like the magistrate's initial determination, is based on the totality of the circumstances. *Id.* This pattern of activity, considered as a totality, would likely create a fair probability of suspicion in any person of average acumen and experience. It most surely would create a high level of suspicion in a trained and experienced officer, on whose suspicions the magistrate was entitled to rely. *See id.* at 1392. Here, the telephonic police affidavit included a description of the involved officer's extensive experience, including three years as a narcotics investigator and significant training in the field.

Therefore, we hold the determination of probable cause is not without a substantial basis. *Cf. United States v. Del Vizo*, 918 F.2d 821, 826–27 (9th Cir.1990) (upholding warrantless arrest under similar factual pattern).

Two related contentions merit our consideration, though they need not detain us long. First, Donato contends the affidavit lacks factual specificity, but this contention is unsubstantiated. The affidavit recites with great detail the factual basis for probable cause.

■ Second, Donato contends the search warrant, even if valid, did not justify a search of the Sophia residence. We require only a reasonable nexus between the activities supporting probable cause and the locations to be searched. *See Rodriguez*, 869 F.2d at 484.

> The magistrate "need not determine that the evidence sought is *in fact* on the premises to be searched ... or that the evidence is more likely than not to be found where the search takes place.... The magistrate need only conclude that it would be reasonable to seek the evidence in the place indicated in the affidavit."

*United States v. Fannin*, 817 F.2d 1379, 1382 (9th Cir.1987), quoting *United States v. Peacock*, 761 F.2d 1313, 1315 (9th Cir.) (citations omitted) (emphasis in original), cert. denied, 474 U.S. 847, 106 S.Ct. 139, 88 L.Ed.2d 114 (1985). In making this determination, the magistrate may rely on the conclusions of experienced police officers regarding where evidence is likely to be found. *Id.* at 1381–82. In this case, Rodriguez took Arango's car to the Sophia residence after the car switch. He drove the car into the garage, closed the garage door, and then reemerged after a few minutes. The officer at the scene, whose experience we have already described, concluded the Sophia residence was a place used for storing drugs. The magistrate, in reliance on these facts and the officer's conclusion, found a reasonable nexus to the Sophia address. This determination, like the finding of probable cause, is not without a substantial basis. We hold the evidence

obtained pursuant to the telephonic warrant was properly admitted against Arango and Donato.

## IV

Finally, Arango challenges his sentence, contending the district court clearly erred by denying him a two-level downward adjustment for minor participant status. *See* United States Sentencing Commission, *Guidelines Manual*, § 3B1.2(b) (Nov. 1990). The sentencing guidelines application notes define a minor participant as "any participant who is less culpable than most other participants, but whose role could not be described as minimal." *Id.* § 3B1.2, comment. (n. 3).

A district court's denial of minor participant status is a factually dependent determination which will be upheld unless clearly erroneous. *United States v. Rexford,* 903 F.2d 1280, 1282 (9th Cir.1990). A simple statement by the district court that the defendant was not a minor participant is typically sufficient to settle the question. *Id.* Here, Arango urged the district court to grant a two-level downward adjustment for minor participant status. The district court expressly rejected his request. Considering that Arango admitted to being well-paid for his services and to flying across the country simply to participate in this particular narcotics delivery, and recognizing that the district court was entitled to disbelieve Arango's self-serving descriptions of his own involvement, we cannot say that the court clearly erred in denying the adjustment. We therefore affirm his sentence.

## V

We conclude the conviction of Ocampo is supported by insufficient evidence, and accordingly, we reverse his conviction. We conclude the telephonic search warrant was supported by probable cause, was sufficiently specific, and was reasonably tied to the Sophia residence. We therefore affirm the district court's admission of evidence obtained pursuant to this warrant and affirm the convictions of Arango and Donato. Finally, there was no clear error in the district court's decision to deny Arango minor participation status, so we affirm his sentence.

REVERSED AS TO OCAMPO; AFFIRMED AS TO DONATO AND ARANGO.