35 F.3d 573
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Jose RODRIGUEZ-SALCEDO, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Reynaldo RAMOS-ARMENTA, Defendant-Appellant.
 Nos. 93-10530, 93-10562.
 United States Court of Appeals, Ninth Circuit.
 Submitted July 14, 1994.*
Decided Sept. 8, 1994.
 
 1
 Before: LEAVY AND KLEINFELD, Circuit Judges, and VAN SICKLE, District Judge.**
 
 
 2
 MEMORANDUM***
 
 
 3
 Defendants appeal their jury convictions for possession with intent to distribute marijuana, 21 U.S.C. Sec. 841(a). Jose Rodriguez-Salcedo challenges as plain error the admission of evidence that he and Reynaldo Ramos-Armenta entered the United States illegally, and offered bribes to a DEA agent after arrest. Reynaldo Ramos-Armenta argues that his conviction was not supported by sufficient evidence.
 
 FACTS AND PROCEEDINGS BELOW
 
 4
 At around 7:00 a.m. on the morning of September 23, 1992, Border Patrol Agents Keith Casiraghi and Tom Frederick were parked in a marked van along highway 82, near Sonoita, Arizona[1], when they observed a white Mercury vehicle occupied by two hispanic males.
 
 
 5
 They followed the vehicle in order to run a check on the license plates. Immediately, the car turned north across the highway, went over a drainage ditch, and shot down an alley. The agents pursued the car, and as they approached, Agent Casiraghi observed two people "bail out" of the vehicle and run. He saw that one had white pants and the other black pants.
 
 
 6
 A local resident, looking out her window into the alley, also saw the car go by. When it stopped at the end of the alley, she observed two young, average-sized hispanic males jump from the car and run east. She testified the men wore "blue-ish" long sleeved shirts and long pants, and that one wore a baseball cap.
 
 
 7
 When the agents arrived at the abandoned car in the alley, they found the motor still running and the doors wide open. Approximately 336 pounds of marijuana were in the trunk. Climbing atop a nearby dirt mound, the agents saw two people running east toward the Sonoita market. They followed in that direction.
 
 
 8
 Immediately upon entering the market, the agents found two young hispanic men standing near the store counter. The men were breathing hard and sweating. One wore light gray pants and the other wore black pants; both had long-sleeved shirts (one blue, one green), and one wore a baseball cap. The resident who had witnessed events in the alley identified the defendants at the scene, based on their clothing and general appearance. The agents testified that, during the pursuit, they saw no other people who matched their observation and the citizen's description of the fleeing men. The entire pursuit lasted about five minutes (RT II 57).
 
 
 9
 After arresting the defendants, the agents compared the their shoes with the footprints surrounding the car, and they concluded that the prints matched. No photographs or plaster impressions were taken. An effort to obtain fresh fingerprints from inside the white Mercury proved unsuccessful. Two latent fingerprints were found, but an expert was not able to identify the defendants based on them.
 
 
 10
 DEA Agent Dan Dunlap interviewed the defendants after their arrest. At trial, he testified that they told him how they had crossed the border illegally on the morning in question, and hitched a ride from a man in a gray pickup. Dunlap also stated that during the drive from Sonita to Tucson for initial appearance, the defendants offered him first $50,000 and then $100,000 to allow their escape.
 
 
 11
 Rodriguez-Salcedo testified at trial, and repeated his story to Dunlap, that he and Ramos-Armenta had entered the United States illegally at Nogales, and hitched a ride to Sonoita in a gray pickup. He denied any knowledge of or connection to the white Mercury. A jury convicted the defendants on April 28, 1993, following a two-day trial.
 
 DISCUSSION
 1. Rodriguez-Salcedo's Appeal
 
 12
 Rodriguez-Salcedo acknowledges that he did not object at trial to the admission of evidence about which he now complains. Consequently, this court reviews only for plain error. United States v. Houser, 804 F.2d 565, 570 (9th Cir.1986); Fed.R.Crim.P. 52(b).
 
 
 13
 Rodriguez-Salcedo maintains that evidence about his illegal entry into the United States, and about an attempted bribe of DEA Agent Dunlap is inadmissible because it concerns crimes other than those charged in the indictment. Whether evidence is in fact "other acts" evidence, under Fed.R.Evid. 404(b) is a question of law, and may be answered by evaluating the relevant purposes of the evidence. United States v. Williams, 989 F.2d 1061, 1070 (9th Cir.1993).
 
 
 14
 Evidence should not be regarded as 404(b) evidence when it concerns acts "inextricably intertwined" with the crime charged. United States v. Soliman, 813 F.2d 277, 279 (9th Cir.1987). The policies underlying 404(b) are inapplicable when "some offenses committed in a single criminal episode become 'other acts' because the defendant is indicted for less than all of his actions." Id. (emphasis added)
 
 
 15
 In this case, the defendants' illegal entry into the United States can certainly be seen as part of a single criminal episode, and thus is not an "other act." The crossing occurred only an hour or so before arrest on marijuana charges, and was offered in evidence to explain why the defendants were in the Sonoita area. See United States v. Ramirez-Jiminez, 967 F.2d 1321, 1327 (9th Cir.1992) (evidence permissible to provide context and sequence of events). More significantly, the fact of the illegal entry came in partly through Rodriguez-Salcedo's own testimony, in an effort to bolster his position that he and Ramos-Armenta had nothing to do with the white marijuana-bearing Mercury. Had the jury believed the defendants' version of events, the evidence of illegal entry would have been relevant to explain why the defendants were found on foot in Sonoita, breathing hard and sweating. Given the exculpatory character of the evidence, there is no basis to find that its admission was plain error which affected the defendant's substantive rights.
 
 
 16
 Nor was it plain error for the district court to allow Agent Dunlap's testimony about the offered bribe. This evidence was closely intertwined in time and context with the crime charged. Rather than proving an unrelated "other act", the evidence was properly admitted to depict behavior after arrest which indicated a consciousness of guilt by the defendants. See People of Territory of Guam v. Ojeda, 758 F.2d 403, 408 (9th Cir.1985).
 
 2. Ramos-Armenta's Appeal
 
 17
 Ramos-Armenta challenges the sufficiency of the evidence supporting his conviction. He faces a highly deferential standard of review, as all the evidence will be viewed in a light most favorable to the prosecution to determine if a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. United States v. Innie, 7 F.3d 840, 844, (9th Cir.1993), cert. denied, 114 S.Ct. 1567 (1994). There is a presumption that the jury "resolved all ... matters in a manner which supports the verdict." United States v. Garza, 980 F.2d 546, 552 (9th Cir.1992).
 
 
 18
 The essential elements of the crime of possession with intent to distribute marijuana are (1) knowing, (2) possession of marijuana, (3) with the intent to distribute it. 21 U.S.C. Sec. 841(a); see United States v. Ocampo, 937 F.2d 485 (9th Cir.1991). Intent to distribute may be inferred from quantity alone, United States v. Smith, 832 F.2d 1167, 1170 (9th Cir.1987), and is not challenged in light of the large quantity of marijuana found in the trunk of the white Mercury.
 
 
 19
 Possession of a controlled substance may be "constructive as well as actual." United States v. Disla, 805 F.2d 1340, 1350 (9th Cir.1986). Constructive possession is not merely a legal fiction; it reflects the reality that there are means of possessing controlled substances which do not involve carrying them on one's person. Id. The hallmark of constructive possession is "dominion and control." United States v. Savinovich, 845 F.2d 834, 837 (9th Cir.), cert. denied, 488 U.S. 943 (1988).
 
 
 20
 In the context of drug possession, control over the place where narcotics are found amounts to control, and thus possession, of the illegal substance. Disla, 805 F.2d at 1350; cf. United States v. Medrano, 5 F.3d 1214, 1217 (9th Cir.1993) (no possession established where defendant did not regain control of drug-bearing vehicle form undercover agents). Clearly constructive possession may be, and usually will need to be, established by circumstantial evidence. Disla, 805 F.2d at 1350; Ocampo, 937 F.2d at 489.
 
 
 21
 Ramos-Armenta complains that the government's evidence did not show his dominion and control of the vehicle containing marijuana. We disagree. The evidence before the jury consisted of: (1) the identification and physical descriptions of the defendants by the Border Patrol Agents; (2) similar descriptions by the local resident witness; (3) the fact that the entire pursuit was brief and continuous, and took place early in the morning when no one else was observed to be present; (4) the agents' footprint comparisons matching the defendants' shoes with the prints surrounding the car; and (5) evidence of the attempted bribes of DEA agent Dunlap to suggest the defendants' consciousness of guilt.
 
 
 22
 In addition, the jury was free to disbelieve the defendants' version of events, including their contention that they knew nothing of the marijuana found. See United States v. Guzman, 446 F.2d 1137, 1139 (9th Cir.1971) ("The question of the occupant's knowledge of ... contraband is for the trier of act to answer, not a court of review"), cert. denied, 404 U.S. 1022 (1972).
 
 
 23
 Viewing the evidence in a light most favorable to the prosecution, the court concludes that it is sufficient to sustain the jury's finding that the defendants knowingly possessed the marijuana in the white vehicle. The element of intent to deliver is easily inferred from the quantity seized, and thus adequate evidence existed to sustain Ramos-Armenta's conviction.
 
 
 24
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 35(a); 9th Cir.R. 34-4
 
 
 **
 Honorable Fred Van Sickle, United States District Judge for the Eastern District of Washington, sitting by designation
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Sonoita is a small town, consisting of only a few buildings, surrounded by ranch land (RT I 16-16). There was testimony that smugglers of both illegal aliens and narcotics pass through Sonoita in order by avoid a checkpoint on Interstate 19, north of Nogales, Arizona (RT I6)