91 F.3d 157
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Richard John SCHMIDT, Jr., Defendant-Appellant.
 No. 95-10327.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted May 15, 1996.
Decided July 2, 1996.
 
 1
 Before: T.G. NELSON and TASHIMA, Circuit Judges, and BURNS,* District Judge.
 
 
 2
 MEMORANDUM**
 
 
 3
 Appellant Richard John Schmidt, Jr. ("Schmidt"), appeals from his conviction for manufacturing machine guns in violation of 26 U.S.C. §§ 5861(a) and 5871, and 18 U.S.C. § 2. We have jurisdiction under 28 U.S.C. § 1291 over this timely appeal and we affirm.
 
 BACKGROUND
 
 4
 After a two-month investigation involving the Bureau of Alcohol, Tobacco and Firearms ("ATF"), local law enforcement agencies and a confidential informant, a federal search warrant, based on the affidavit of ATF Special Agent Robert S. Christopherson, was issued by a magistrate. The warrant was executed at Schmidt's residence at 110 West Walnut Avenue in Visalia, California.[1] The officers found incriminating evidence there, including five machine guns in various stages of manufacture.
 
 
 5
 A ten-count indictment was then filed, charging Schmidt with manufacturing machine guns and possession of machine guns. 26 U.S.C. §§ 5681(a), 5871; 18 U.S.C. § 922(o)(1). A superseding indictment was later filed, adding a witness tampering count. 18 U.S.C. § 1512(b)(1).
 
 
 6
 Schmidt filed a motion to suppress, arguing that Agent Christopherson's affidavit did not establish probable cause to search his Walnut Avenue residence. He subsequently filed a Franks motion[2] challenging Agent Christopherson's veracity. The district court denied the motion to suppress. Although the court found that Agent Christopherson had intentionally or recklessly made a misstatement in his affidavit, it concluded that "the affidavit, excised of the offending passage, still contains additional information which easily supports a finding of probable cause."
 
 
 7
 Schmidt then moved for reconsideration and for an additional Franks hearing regarding three new alleged misstatements by Agent Christopherson. That motion also was denied. Schmidt ultimately entered a conditional guilty plea.
 
 DISCUSSION
 I. Denial of the Motion to Suppress
 A. The face of the affidavit
 
 8
 We review a magistrate's issuance of a search warrant for clear error, United States v. Bertrand, 926 F.2d 838, 841 (9th Cir.1991), and must determine whether there was a substantial basis for the conclusion that the affidavit in support of the warrant established probable cause. United States v. Brown, 951 F.2d 999, 1002 (9th Cir.1991). "Probable cause exists when, considering the totality of the circumstances, 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.' " United States v. Ocampo, 937 F.2d 485, 490 (9th Cir.1991) (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)). Ordinarily, a reviewing court "is limited to the information and circumstances contained within the four corners of the underlying affidavit." United States v. Stanert, 762 F.2d 775, 778 (9th Cir.), amended on other grounds, 769 F.2d 1410 (9th Cir.1985).
 
 
 9
 The search warrant affidavit here, a 17-page single-spaced document prepared by Agent Christopherson, sets out, inter alia, the following facts from a two-month investigation into the manufacture and distribution of machine guns in Visalia.
 
 
 10
 Agent Christopherson's involvement in the case began on February 10, 1994, when Officer Larry Micari of the Farmersville Police Department contacted him. Officer Micari said that a man living at 15875 Avenue 288 in Visalia had recently sold a Sten machine gun to a then-confidential informant, Ted Terry (the "informant"), whom Micari had known, and known to be reliable, for ten years. Agent Christopherson subsequently met with the informant, who was able to identify the person who sold him the gun as Schmidt's co-defendant Lynn Arlen Hamilton ("Hamilton"). The informant related that Hamilton lived in the house on Avenue 288 with his mother, Yvonne Williams, and another man, Terry Smith.
 
 
 11
 Under the supervision of Officer Micari and Agent Christopherson, the informant took part in a series of recorded conversations with Hamilton, negotiating for the purchase of more machine guns. Although the informant's negotiations were always exclusively with Hamilton, the affidavit contains facts which strongly suggest that Hamilton obtained his guns from other locations, one of which was Schmidt's Walnut Avenue residence.
 
 
 12
 For example, on February 26, 1994, the informant contacted Hamilton at his Avenue 288 residence, seeking to purchase two Sten machine guns that Hamilton had said would be available that day. Instead, Hamilton required a $500 deposit, with delivery in two days. According to the informant, Hamilton explained that "the ground rules were laid down to him [Hamilton] and that he was dealing with someone else. Hamilton said he had to purchase them before he got them." Similarly, Hamilton told the informant on March 7, 1994, that he was "helping a guy" build a new type of "MAC" machine gun.
 
 
 13
 These facts indicate that Hamilton was not acting alone; he had at least one supplier and co-builder. The affidavit goes on to suggest precisely who, and where, that other person was.
 
 
 14
 On March 7, 1994, the affidavit states that the informant went to Hamilton's house at 1:23 p.m. to ask what guns Hamilton had available; the informant had previously ordered three machine guns. Hamilton responded that "he had not called over there" but told the informant to return at around 4:30 or 5:00 p.m., when Hamilton would be able to tell him the precise date and time of the guns' availability.
 
 
 15
 The informant then returned to Hamilton's residence shortly before five o'clock that afternoon. Hamilton told the informant that "he had just come from there" and that the Sten and the MAC machine guns would be ready by the next afternoon. Thus, Hamilton implied that he had just come from the machine gun builder. Surveillance officers had observed that Hamilton had just come from Schmidt's Walnut Avenue residence. Thus, the most logical conclusion is that the other machine gun builder was located at Schmidt's residence.
 
 
 16
 The affidavit next records that on March 30, 1994, Hamilton was to have the guns ready for the informant. But when the informant arrived at Hamilton's Avenue 288 house, Hamilton was not there. Hamilton's mother, Yvonne Williams, told the informant that Hamilton was "at Smitty's." She telephoned her son, and handed the phone to the informant. Hamilton told the informant to meet him at the Grand Auto store at the corner of Mooney and Walnut Avenues in Visalia. At the time Hamilton was on the phone with the informant, surveillance placed Hamilton at Schmidt's Walnut Avenue house.
 
 
 17
 When they met shortly thereafter at the Grand Auto, Hamilton explained that the guns were nearly finished and that he would soon have one to test fire. Hamilton gave the informant a pager so he could be reached, and returned to Schmidt's house, still under surveillance. Later that afternoon, the informant received a message on the pager: He was to call a certain phone number, which belonged to Schmidt.
 
 
 18
 The informant called Schmidt's number, and Hamilton again told him to meet him at Grand Auto. When they met, Hamilton gave the informant two prototype machine guns. This strongly implies that Hamilton obtained the guns from Schmidt's house: He did not have them at the first Grand Auto meeting, and he had been nowhere except Schmidt's house since then, other than a brief stop at a local service station. Later, Hamilton walked across the street from Schmidt's house to a 7-Eleven store, where he had arranged to have the informant return the machine gun prototypes.
 
 
 19
 These facts were corroborated by others in the affidavit. For example, the two prototypes, in the opinion of 22-year ATF veteran Christopherson, "were manufactured from raw metal stock" rather than from parts kits. Christopherson had been able to determine, from a law enforcement data base, that Schmidt was a welder. Thus, Schmidt had the skills necessary to build guns from raw metal stock.
 
 
 20
 Terry Smith ("Smith"), Hamilton's housemate, also unwittingly corroborated that guns were being built at Schmidt's house. Officer Micari told Agent Christopherson that in the week prior to March 25, 1994, Smith had agreed to be driven by the informant to Hamilton's partner's house in order to determine why the guns were not yet available. Although Smith had the informant drop him off on a street corner, the informant saw Smith enter 110 West Walnut, Schmidt's residence.
 
 
 21
 At another time, Smith had told the informant that Hamilton was not building the guns at home, but that someone else was manufacturing them in a house across the street from a 7-Eleven store on Walnut Avenue. The only 7-Eleven store on Walnut Avenue in Visalia is across the street from Schmidt's house.[3]
 
 
 22
 Schmidt argues that all of Hamilton's visits to his house might have had some innocent explanation. For example, he suggests, Hamilton may have just been at Schmidt's house to work on automobiles. Agent Christopherson did, after all, observe Hamilton working on an automobile in front of 110 West Walnut on the morning of March 30, 1994. But "[t]he fact that some of these acts, if reviewed separately, might be consistent with innocence is immaterial. Our review, like the magistrate's initial determination, is based on the totality of the circumstances." Ocampo, 937 F.2d at 490 (citations omitted). Here, the totality of the circumstances establishes more than a fair probability that Hamilton was not there just to work on automobiles, but to work on machine guns as well.[4]
 
 
 23
 The magistrate had a substantial basis to conclude that the affidavit established probable cause to search Schmidt's residence.
 
 B. The false statement in the affidavit
 
 24
 The district court's finding that Agent Christopherson intentionally or recklessly made a false statement within his affidavit does not alter the outcome. The district court's finding that the false statement was intentional or reckless is reviewed for clear error, United States v. Dozier, 844 F.2d 701, 705 (9th Cir.), cert. denied, 488 U.S. 927 (1988); the conclusion that the false statement was not sufficient to negate a finding of probable cause is reviewed de novo. Id.
 
 
 25
 In his affidavit, Agent Christopherson described a February 28, 1994, recorded conversation between Hamilton and the informant in which Hamilton explained why he preferred to take a deposit when taking machine gun orders: "Hamilton stated he did not want to be taking orders from different people for the same customer. He explained that if he took an order for four and then the guy placed an order with 'Smitty,' he's stuck with four guns." The district court found that the tape of that conversation indicates that Hamilton actually referred to "Smiley," not "Smitty," and that Agent Christopherson intentionally or recklessly changed the name in his affidavit.[5]
 
 
 26
 The reference to "Smiley" must be evaluated in the context of all the circumstances. See United States v. Meling, 47 F.3d 1546, 1554 (9th Cir.1995). In light of the many facts in the affidavit that, as discussed above, established probable cause to search Schmidt's house, the reference to people placing orders with "Smitty" may be disregarded.
 
 
 27
 Even with the affidavit's false statement set aside, the affidavit's remaining content is sufficient to establish probable cause. The district court did not err in denying defendant's motion to suppress. See Franks, 438 U.S. at 156.
 
 
 28
 II. Denial of the Motion for Reconsideration and for a Further Franks Hearing
 
 
 29
 As stated, upon the denial of his motion to suppress, Schmidt moved for reconsideration and for a further Franks hearing.[6] That motion, too, was denied.[7] A denial of a motion for reconsideration is reviewed for abuse of discretion. United States v. Rabb, 752 F.2d 1320, 1323 (9th Cir.1984). Schmidt contends that the district court abused its discretion in not ordering a further Franks hearing in light of three additional misstatements or omissions that he pointed out in his motion for reconsideration.
 
 
 30
 The first misstatement related to the affidavit's description of a recorded conversation between the informant and Smith on February 28, 1994. The informant had gone to Smith and Hamilton's house to purchase a machine gun from Hamilton, but Hamilton was not there. Smith attempted to reach Hamilton by phone, but was unsuccessful. According to the affidavit, Smith then volunteered to go "locate the builder and find out what was going on." Schmidt contends that the recording of that conversation indicates that the word "builder" was never used.
 
 
 31
 That misstatement is insignificant. Even if Smith had not used the word "builder," the affidavit presented little doubt, as discussed supra, that Hamilton was building the machine guns with the aid of at least one other person, and that the other person lived at Schmidt's residence.
 
 
 32
 The second and third alleged inaccuracies are similarly trivial. Schmidt claimed in his motion for reconsideration that, although the affidavit stated that Hamilton had said that the ground rules regarding deposits for guns were being laid down by someone else, it omitted that Hamilton also suggested that the person laying down those ground rules lived in Bakersfield, not Visalia. Further, Schmidt claimed that while the affidavit stated that Smith told the informant that the builder lived across from a 7-Eleven in Visalia, it failed to state that Smith had told the informant that Smith thought the guns were coming from Paso Robles.
 
 
 33
 Those omissions would only affect the probable cause to search Schmidt's residence if his unstated premise--that there was only a single source for Hamilton's inventory of assorted machine guns--were accepted. If Hamilton had only one source, and that source were in Paso Robles, or in Bakersfield, then it could not also be in Visalia, i.e., at Schmidt's residence. But there is no reason to believe, on the face of the affidavit or otherwise, that Hamilton had only one source. To the contrary, in the same conversation that Smith said he thought the guns were coming from Paso Robles, he stated that Hamilton probably had other connections, as well. Similarly, the affidavit describes Schmidt's residence as "Hamilton's principal manufacturing site," not his only manufacturing site.
 
 
 34
 The alleged misstatements and omissions raised in Schmidt's motion for reconsideration, then, were not necessary to a finding of probable cause to search Schmidt's residence. Because Schmidt's showing on reconsideration failed to meet Franks' second prong, a further evidentiary hearing was not required. See Franks, 438 U.S. at 155-56, 171-72. Thus, the district court did not abuse its discretion in denying the motion for reconsideration and for a further evidentiary hearing.
 
 CONCLUSION
 
 35
 The judgment of conviction is AFFIRMED.
 
 
 
 *
 Honorable James M. Burns, Senior United States District Judge for the District of Oregon, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 On the same date, officers also searched the home of a co-defendant, Lynn Arlen Hamilton, at 15875 Avenue 288, in Visalia. Hamilton pled guilty without challenging the search
 
 
 [2]
 Franks v. Delaware, 438 U.S. 154, 155-56 (1978), instructs that where a defendant makes a substantial preliminary showing that (1) the affiant made a false statement to the magistrate either deliberately or with reckless disregard for the truth, and (2) the false statement is necessary to a finding of probable cause, an evidentiary hearing must be held at the defendant's request
 
 
 [3]
 Defendant argues that Smith's reliability was never established in the affidavit, so his opinions about who manufactured the guns must be ignored. That analysis is incorrect; Smith's comments and actions must be gauged within the totality of the circumstances. See Gates, 462 U.S. at 238. Smith certainly would have known that Hamilton was not manufacturing the guns at the Avenue 288 address--Smith lived there, too. Further, Smith's comments and actions were independently corroborated by numerous facts, as discussed supra
 
 
 [4]
 Schmidt's other arguments against probable cause are also without merit. He points out that the only metal shop observed during the investigation was at Hamilton's residence; not at Schmidt's residence. However, considerable other evidence in the affidavit, as detailed supra, indicates a fair probability that there were gun-building facilities at Schmidt's house as well
 
 
 [5]
 The government concedes, as it did below, that Hamilton did refer to people placing orders for guns with "Smiley," not "Smitty." But it argues that it was clear error to find that the false statement was made intentionally or recklessly, given that Agent Christopherson testified that he had simply made an innocent mistake. Although we assume for our analysis that the district court did not err, we do not reach the issue of Agent Christopherson's state of mind. Because, as discussed infra, the lower court was correct in concluding that "the affidavit, excised of the offending passage, still contains additional information which easily supports a finding of probable cause," it is unnecessary to decide that issue
 
 
 [6]
 The government argues that Schmidt's motion for reconsideration, which was made more than a month after the motion to suppress was denied, was not timely under Local Rule 303(b) of the Eastern District of California, which requires that a motion for reconsideration be brought within five days. The government's reliance on Local Rule 303(b) is misplaced; that rule deals with reconsideration of orders by magistrate judges. The relevant rule was Local Rule 430(k), which contains no such time constraint
 
 
 [7]
 The district court ruled:
 Defendant's request for a Franks hearing is denied on the grounds of this Court's previous finding that probable cause supported the search warrant. Moreover, the Court has considered this issue extensively and fully in denying Defendant's previous motion, and has set forth the reasons for that denial in the previous order ... Therefore, reconsideration is unnecessary.