122 F.3d 1075
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES OF AMERICA, Plaintiff-Appellee,
v.
Jose LOZA-ROMERO, Defendant-Appellant.
UNITED STATES OF AMERICA, Plaintiff-Appellee,
v.
Ruben CONTRERAS-RODRIGUEZ, Defendant-Appellant.
 Nos. 95-50554, 95-50574.
 United States Court of Appeals, Ninth Circuit.
 Sept. 5, 1997.
 
 Appeal from the United Slates District Court for the Central District of California Lourdes G. Baird, District Judge, Presiding
 Before: FARRIS, BEEZER and TASHIMA, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Jose Loza-Romero appeals his jury conviction and sentence for conspiracy and possession with intent to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1), 846. Ruben Contreras-Rodriguez appeals his jury conviction for the same crimes. We have jurisdiction pursuant to 28 U.S.C. § 1291 and we affirm.
 
 
 3
 * Both Loza-Romero and Contreras-Rodriguez argue that the government failed to provide sufficient evidence to convict them of either conspiracy or possession with intent to distribute cocaine. In reviewing a challenge to the sufficiency of the evidence, we determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Bautista-Avila, 6 F.3d 1360, 1362 (9th Cir.1993) (quotation omitted).
 
 A.
 
 4
 To prove conspiracy in violation of 21 U.S.C. § 846, the government must prove (1) an agreement to commit a crime, and (2) the defendant's knowledge of the conspiracy's objectives and an intent to further them. United States v. Gil, 58 F.3d 1414, 1423 n. 5 (9th Cir.), cert. denied, 116 S.Ct. 430 (1995). Neither defendant denies the existence of a conspiracy. Rather, both argue that the government failed to produce substantial evidence that they knowingly participated in the conspiracy.
 
 
 5
 Once the existence of a conspiracy has been shown, evidence establishing beyond a reasonable doubt a defendant's "slight connection" with the conspiracy is sufficient for conviction. Bautista-Avila, 6 F.3d at 1362. The government need not present direct evidence of a defendant's involvement in the conspiracy; circumstantial evidence and inferences drawn from that evidence will sustain a conspiracy conviction. United States v. Castro, 972 F.2d 1107, 1110 (9th Cir.1992). However, "evidence has to be produced to show that the person charged as a co-conspirator had knowledge of the conspiracy and acted in furtherance of it. Mere casual association with conspiring people is not enough." United States v. Wiseman, 25 F.3d 862, 865 (9th Cir.1994) (quotations omitted).
 
 1.
 
 6
 The evidence connecting Loza-Romero to the conspiracy and establishing that he had knowledge of it is circumstantial. NonetheLess, when viewed in the light most favorable to the prosecution, the evidence is sufficient to sustain the conviction.
 
 
 7
 First, Loza-Romero was present at the San Bernardino residence where the pallets of concealed cocaine were stored. Although mere presence is insufficient to sustain a conspiracy conviction without other proof linking the defendant to the illicit activity, United States v. Ocampo, 937 F.2d 485, 489 (9th Cir.1991), the government here did present additional evidence, detailed below, to establish Loza-Romero's knowledge of the conspiracy. The jury could properly consider Loza-Romero's presence at the San Bernardino as part of the evidence linking him to the conspiracy.
 
 
 8
 Second, the government presented evidence that Loza-Romero took Possession of the half-ton of cocaine by unloading the pallets containing the drugs from tie delivery van into the San Bernardino house. "[I]t is well es-stablished in this Circuit that mere possession of a substantial quantity of drugs will support an inference of knowledge." United States v. Davila-Escovedo, 36 F.3d 840, 843 (9th Cir.1994). Loza-Romero argues that because the cocaine was hidden in the tubing long before it came into his possession, it is inappropriate to infer that he knew of the drugs. Again, this evidence, standing alone, might be insufficient to prove knowledge. But the government offered other evidence which, along with the evidence of possession, would permit a reasonable jury to infer knowledge.
 
 
 9
 Third, the government points to Loza--Romero's long-term association with Jose Alfredo Vargas, the apparent leader of the conspiracy, as evidence of Loza-Romero's knowledge. Loza-Romero asserts that his association with Vargas cannot support a conspiracy conviction. See United States v. Ramos-Rascon, 8 F.3d 704, 711 (9th Cir.1993) (the inferences which rise from a defendant's keeping of "bad company" are not enough to convict the defendant of conspiracy). The evidence, however, establishes more than a mere association between Loza-Romero and Vargas. Loza-Romero performed many favors for Vargas which reasonably could be viewed as circumstantial evidence that Loza-Romero knew of and participated in the conspiracy. Such favors included: (1) permitting Vargas to list Loza-Romero's address as Vargas' address on a Customs document, (2) storing pipe, similar to that used in the pallets found at the San Bernardino house, for Vargas in Loza-Romero's garage, and (3) allowing Vargas to list Loza-Romero as a contact for self-storage units in which police found pipe and wrapping materials like those used in the concealed shipment of cocaine at issue.
 
 
 10
 Loza-Romero gave the jury innocent explanations for his favors to Vargas, stating that he was simply attempting to help Vargas, whom he had known for years, and had no knowledge of the drugs in the spools. He testified that he did not know he was listed as a contact for the self-storage units. However, "[a]cts which seem otherwise innocent, when viewed in the context of the surrounding circumstances, may justify an inference of complicity." United States v. Matta-Ballesteros, 71 F.3d 754, 765 (9th Cir.1995), amended by 98 F.3d 1100 (9th Cir.1996), cert. denied, 117 S.Ct. 965 (1997). The jury was not required to accept Loza-Romero's innocent explanation for the behavior in question. See United States v. Dinkane, 17 F.3d 1192, 1200 (9th Cir.1994).
 
 
 11
 Fifth, other evidence suggests that Loza-Romero was conscious of his guilt. He attempted to flee from the San Bernardino house when police approached. See id. at 1199 (jury can consider evidence of flight as indication of defendant's guilty conscience). Loza-Romero also made a false exculpatory statement to police regarding the reason for his presence at the San Bernardino house which he later admitted was a lie. See United States v. Newman, 6 F.3d 623, 628-29 (9th Cir.1993) (false exculpatory statements provide circumstantial evidence of a defendants guilty conscience and, thus, of the fact of guilt). Further, Loza-Romero's testimony at trial that he went to the residence to mow the lawn was inconsistent with police testimony that no gardening equipment was found at the residence. The jury was free to infer that the defendant was lying.
 
 
 12
 Our inquiry is not whether the defendant is "plausibly not guilty[,]" but rather "whether any reasonable jury could find the elements of the crime, on these facts, beyond a reasonable doubt." United States v. Aichele, 941 F.2d 761, 764 (9th Cir.1991). The totality of the government's evidence, including Loza-Romero's possession of a large quantity of concealed drugs, could allow a reasonable jury to find that he knew of the conspiracy and was acting in furtherance of it. The evidence was sufficient to support a conviction of conspiracy.
 
 2.
 
 13
 The government's evidence establishing that Contreras-Rodriguez knew of the conspiracy and acted in furtherance of it is also circumstantial. Highlights include: (1) his presence at California Auto Upholstery and Hardware when the concealed drugs arrived; (2) his taking possession of a large amount of cocaine by unloading the pallets of the hidden drugs, breaking the pallets down into smaller spools and loading these spools into a delivery van; (3) his control over California Auto where numerous shipments of pallets, similar to the one found to contain concealed cocaine, had been delivered and stored; (4) his relationship with Vargas, including the listing of California Auto's number on two of Vargas' self-storage contracts; (5) his attempt to hide and resist arrest then police entered California Auto; (6) his lies to police denying that he had loaded the spools onto the van and claiming that he had no knowledge of who employed him.
 
 
 14
 Similar to Loza-Romero, Contreras-Rodriguez asserts that each piece of evidence is either insufficient to prove knowledge or susceptible to an innocent explanation which the government did not contradict. See Bautista-Avila, 6 F.3d at 1363 (citing United States v. Vasquez-Chan, 978 F.2d 546, 549 (9th Cir.1992)) ("[w]hen there is an innocent explanation for a defendant's conduct as well as one that suggests the defendant was engaged in wrongdoing, the government must produce evidence that would allow a rational jury to conclude beyond a reasonable doubt that the latter explanation is the correct one").
 
 
 15
 Contreras-Rodriguez argues that the government's evidence of his "control" over California Auto, where drugs were delivered and stored, does not prove his knowing involvement in the conspiracy. Contreras-Rodriguez alleges that he was responsible merely for the legitimate business, the upholstering work, done by California Auto. He contends he remained ignorant of the true nature of the drug related activities at the shop; he stresses that another Vargas associate spent his days at California Auto, signed the delivery slip for the concealed cocaine and was therefore possibly responsible for conducting the illegitimate practices of California Auto. Contreras-Rodriguez also contends that the government's evidence that Vargas listed the California Auto telephone number on two self-storage rental contracts cannot implicate him; he suggests that he could have relayed messages to Vargas without knowing that such messages were related to a drug conspiracy.
 
 
 16
 If the government had relied solely on one of these evidentiary grounds for which Contreras-Rodriguez produced a potentially innocent story, the evidence might be insufficient to sustain a conviction. The jury, however, was not required to accept the defendant's innocent explanations because the government offered additional incriminating evidence, including Contreras-Rodriguez's possession of the concealed cocaine and his apparent consciousness of guilt. See Matta-Ballesteros, 71 F.3d at 765.
 
 
 17
 Moreover, our analysis of the evidence establishing Loza-Romero's presence at the scene of illegal activity, possession of drugs and association with Vargas also applies to the parallel evidence against Contreras-Rodriguez. When we view the evidence as a whole, it creates a reasonable inference of complicity. The evidence was sufficient to sustain Contreras-Rodriguez's conspiracy conviction.
 
 B.
 
 18
 A conviction for possession with intent to distribute can be based on co-conspirator liability. Ramos-Rascon, 8 F.3d at 711. Because we hold that there was sufficient evidence to convict Loza-Romero and Contreras-Rodriguez for conspiracy, we also hold as sufficient the evidence supporting their convictions for possession with intent to distribute.
 
 II
 A.
 
 19
 Both defendants challenge the district court's failure to instruct the jury on the presumption of innocence, which they claim resulted in a violation of their due process rights. We review de novo whether a jury instruction violates due process. United States v. Amparpo, 68 F.3d 1222, 1224 (9th Cir.1995), cert. denied, 116 S.Ct. 1055 (1996).
 
 
 20
 Failure to give a presumption of innocence instruction does not, in itself, violate the Constitution. Kentucky v. Whorton, 441 U.S. 786, 789 (1979). A court commits reversible error by failing to give this instruction only when the instructions as a whole do not fulfill the purposes of the presumption of innocence instruction. United States v. Payne, 944 F.2d 1458, 1465-66 (9th Cir.1991). The dual purposes of the presumption of innocence instruction are: (1) emphasizing to the jury that the government bears the burden of proof beyond a reasonable doubt and (2) cautioning the jury that it must arrive at its conclusion solely from the evidence advanced at trial, e.g., not to infer guilt from official suspicion. Id. at 1466. He ask whether, considering the totality of the circumstances, the jury instructions served these dual functions. Id.
 
 
 21
 The instructions given by the district court did fulfill the dual purposes of the presumption of innocence instruction. The district court explained during voir dire that the indictment was not evidence, thereby cautioning the jury not to infer guilt form official suspicion. See id. at 1467 (where, among other factors, trial court repeatedly explained the presumption of innocence during voir dire, failure to give presumption of innocence instruction did not violate due process). More importantly, the instructions given by the district court emphasized that: (1) the jury must decide the case solely on the evidence presented at trial; (2) the government had the burden of proving guilt beyond a reasonable doubt; and (3) the defendants had no duty to produce any evidence. Further, defense counsel discussed the presumption of innocence and the prosecutor explicitly recognized the government's burden of proof. See id. Because, considering the totality of the circumstances, the jury instructions repeatedly explained the burden of proving guilt beyond a reasonable doubt and the requirement that the jury must rely only on the evidence introduced at trial, the dual functions of the presumption of innocence instruction were served. The defendants did not suffer a due process violation.
 
 B.
 
 22
 Contreras-Rodriguez also asserts that the district court erred by failing to instruct the jury as to his theory of defense; he contends that the district judge should have given "mere presence" and "knowing possession" instructions. "[A] defendant is entitled to have the judge instructions the jury on his theory of defense, provided that it is supported by law and has some foundation in the evidence." United States v. Duran, 59 F.3d 938, 941 (9th Cir.) (quoting United States v. Gomez-Osorio, 957 F.2d 636, 642 (9th Cir.1992)), cert. denied 116 S.Ct. 535 (1995). We apply an abuse of discretion standard in determining whether the required factual foundation exists. Id. We review de novo whether the instructions given adequately cover the defense theory. Id.
 
 
 23
 Contreras-Rodriguez requested the district court to instruct the jury that "mere presence" at the scene of a crime is insufficient to show that the defendant committed the crime. This proposed instruction is both supported by law, see Ocampo, 937 F.2d at 489, and has a foundation in the evidence. Nonetheless, where other instructions adequately cover the theory of defense, we will not reverse the district court for failing to give the defendant's proposed instructions. United States v. Dees, 34 F.3d 838, 842 (9th Cir.1994). First, "mere presence" instructions are rarely necessary; they are required only when the government rests "primarily on the defendant's presence." United States v. Medrano, 5 F.3d 1214, 1218 (9th Cir.1993) (citations and quotations omitted). As discussed in Section IB, the government produced additional evidence to establish, among other things, possession and consciousness of guilt. Second, the instructions given made clear that mere presence at a crime is not enough for conviction. The conspiracy instruction stated that the government had to prove (1) a conspiracy and (2) that defendant knew about the criminal goal of the conspiracy and intended to help achieve that goal. The possession with intent to distribute instruction stated that the government had to establish knowing possession and intent to deliver. Both instructions made clear that the government could not rest upon a showing of mere presence.
 
 
 24
 Contreras-Rodriguez also asserts that the district court erred in refusing to give his proposed "knowing possession" instruction.[1] His proposed instruction reads:
 
 
 25
 In order for the defendant to be guilty of possession of narcotics, he must have had power to exercise dominion and control over the narcotics; a defendant's mere proximity to the drug, his presence on the property where it is located, his knowledge of their [sic] existence and location, and his association with the person who controls it are insufficient to support a conviction.
 
 
 26
 The district court did not err in refusing to give this proposed instruction. First, this instruction is quite similar to the proposed "mere presence" instruction which, for reasons discussed in Section IIA, was not required. Second, the instructions that the district court did give render unnecessary the remainder of the proposed instruction. For example, the court defined possession in terms synonymous with the proposed "dominion and control" language, stating that "a person has possession of something if the person knows of its presence and has physical control of it or has the power and intention to control it." Likewise, the court's instructions on conspiracy and possession with intent to distribute made clear that neither association with criminals or knowledge of the existence and location of cocaine amounts to either conspiracy or possession with intent to distribute.
 
 III
 
 27
 Contreras-Rodriguez maintains that the district court erred by refusing to suppress his post-arrest statement that he did not know who his employer was.
 
 A.
 
 28
 Contreras-Rodriguez alleges that the police interrogated him before giving him Miranda warnings. See Pope v. Zenon, 69 F.3d 1018, 1023 (9th Cir.1995) (police may not interrogate a suspect in custody until they advise the suspect of his Miranda rights, and even post-warning statements are inadmissible if they are the fruit of pre-warning interrogation). We review de novo the mixed question of law and fact of whether a defendant was subjected to interrogation. United States v. Moreno-Flores, 33 F.3d 1164, 1168 (9th Cir.1994).
 
 
 29
 Contreras-Rodriguez notes that Customs special agent Sampedro confronted him with evidence against him by telling him that he had been seen unloading spools from a van, showing him a delivery receipt with his signature on it and telling him that there had been one ton of cocaine hidden in the spools. Sampedro also emphasized that Contreras-Rodriguez was facing serious consequences. Sampedro's conduct does not amount to interrogation within the meaning of Miranda. Interrogation does not encompass the questions and conduct normally attendant to arrest. United States v. Henley, 984 F.2d 1040, 1042 (9th Cir.1993); see Moreno-Flores, 33 F.3d at 1169 (no violation when officer told defendant that police had seized 600 pounds of cocaine and the he was in "serious trouble").
 
 
 30
 Contreras-Rodriguez claims, however, that Sampedro's statements went beyond those allowed by law. The defendant highlights Sampedro's remark that he would bring Contreras-Rodriguez's cooperation "to the attention of the U.S. Attorney." Sampedro's declaration, however, shows unequivocally that he did not make this statement until after he had given the Miranda warning to Contreras-Rodriguez. Sampedro's conduct does not amount to pre-warning interrogation.
 
 B.
 
 31
 Contreras-Rodriguez next asserts that the police used psychologically coercive tactics while interrogating him, thus rendering his statement involuntary. We review de novo whether a statement was voluntary. United States v. Willard, 919 F.2d 606, 608 (9th Cir.1990).
 
 
 32
 To be voluntary, a statement must be "the product of a rational intellect and a free will." United States v. Crespo de Llano, 830 F.2d 1532, 1541-42 (9th Cir.1987). We review the totality of the circumstances to ascertain if the statement was elicited "by physical or psychological coercion or by improper inducement so that the suspect's will was overborne." United States v. Harrison, 34 F.3d 886, 890 (9th Cir.1994)
 
 
 33
 Contreras-Rodriguez contends that his lack of education, his youth and his lack of experience with police made him susceptible to coercion. Only those subjective characteristics, however, that make a defendant "more susceptible to subtle forms of coercion" are relevant to our inquiry. United States v. Huynh, 60 F.3d 1386, 1388 (9th Cir.1995). Characteristics such as age and mental capacity are "irrelevant absent proof of coercion." Derrick v. Peterson, 924 F.2d 813, 318 (9th Cir.1990). Contreras-Rodriguez offers no evidence that any of his subjective characteristics make him especially susceptible to coercion.
 
 
 34
 The defendant also asserts that the police used coercive pre-and post-Miranda warning tactics. As discussed in Section IIIA, however, the pre-Miranda warning statements made by agent Sampedro amount to no more than the provision of information "normally attendant to custody and arrest." Moreno-Flores, 33 F.3d at 1169. Sampedro's post-Miranda warning comment that he would inform the prosecutor of Contreras-Rodriguez's cooperation also does not amount to coercion. "An interrogating agent's promise to inform the government prosecutor about a suspect's cooperation does not render a subsequent statement involuntary." United States v. Guerrero 847 F.2d 1363, 1366 (9th Cir.1988). The tactics used by police were not psychologically coercive, did not overbear Contreras-Rodriguez's will and did not render his statement involuntary.
 
 IV
 
 35
 Last, we consider Loza-Romero's challenge to his sentence. He argues that the district court should have granted him a sentence reduction for being a "minor participant" within the meaning of 3B1.2 of the Sentencing Guidelines ("Mitigating Role"). We review for clear error a district court's factual findings regarding mitigating role sentence adjustments. United States v. Benitez, 34 F.3d 1489, 1497 (9th Cir.1994)
 
 
 36
 The relevant section of the Guidelines provides for a decrease in the offense level of a convicted defendant when the defendant was either a "minimal" or "minor" participant. U.S.S.G. § 3B1.2(a)-(b). A "minor participant" is one who "is less culpable than most other participants, but whose role could not be described as minimal." Id. (commentary, application note 3). Being less culpable than one's co-participants, however "does not automatically result in minor status," United States v. Andrus, 925 F.2d 335, 338 (9th Cir.1991); rather, the defendant must show that he or she was "substantially less culpable than his co-participants" Benitez, 34 F.3d at 1498 (quotation omitted).
 
 
 37
 At sentencing, the district court found that Loza-Romero was not substantially less culpable than the other participants. The court did not find the defendant's testimony regarding his role and lack of knowledge credible. The court concluded that Loza-Romero had been a knowing member of the drug conspiracy for several months and that his contributions to the conspiracy had been ongoing and significant. The district court did not commit clear error in finding that Loza-Romero was not a "minor participant."
 
 
 38
 AFFIRMED.
 
 TASHIMA.P., Circuit Judge, Dissenting:
 
 39
 Because I believe that the evidence is insufficient to sustain these convictions, and because they are rendered even more suspect by the trial court's inexplicable failure to give a presumption of innocence instruction, or its substantial equivalent, I dissent.
 
 I. Sufficiency of the Evidence
 
 40
 The majority relies upon a patchwork of circumstantial evidence to show that the evidence was sufficient. That evidence, however, shows nothing more than that defendants were unwittingly drafted into an acquaintance's drug smuggling conspiracy. Nothing shows that they participated knowingly.
 
 A. Loza-Romero
 
 41
 The majority relies upon four items of circumstantial evidence to support the conclusion that Loza-Romero was a knowing participant in the conspiracy: (1) he was present at the San Bernardino house when the drugs arrived, (2) he took possession of the drugs, (3) he had previously done some favors for Vargas, and (4) he appeared to have a guilty conscience. Under the circumstances of this case, this evidence is insufficient to prove knowledge beyond a reasonable doubt.
 
 
 42
 The majority concedes that the first two items of circumstantial evidence are, at best, tenuous. That Loza-Romero was present when the drugs were delivered cannot be taken to show knowledge: "it is not enough to show mere proximity to the drug or a defendant's presence on the property where it is located." United States v. Ocampo, 937 F.2d 485, 489 (9th Cir.1991); see also United State v. Ramirez, 880 F.2d 236, 238-39 (9th Cir.1989) (insufficient evidence of knowledge where defendant spent night in house full of hidden but accessible drugs). It is especially inappropriate to infer knowledge from presence in this case, given how cleverly the drugs had been disguised.[1]
 
 
 43
 For the same reason, the fact that Loza-Romero took "possession" of the cocaine when he helped unload it at the San Bernardino house is insufficient to show knowledge. It is true that when a defendant possesses a large amount of drugs it is sometimes appropriate to infer knowledge. See e.g., United States v. Davila-Escovedo, 36 F.3d 840, 843 (9th Cir.1994) (proper to infer knowledge where defendant driving truck full of hidden drugs); United States v. Barbosa, 906 F.2d 1366, 1368 (9th Cir.1990) (proper to infer knowledge where defendant carrying chess sets full of cocaine). But those cases are inapplicable here. In those cases, it was entirely possible that the defendants themselves had disguised the drugs so that they could later feign innocence. Here, however, no such ruse was possible; Customs inspectors intercepted the disguised drugs long before they were ever placed in Loza-Romero's hands. On these facts, the inference of knowledge is inappropriate.
 
 
 44
 The majority asserts that the remaining evidence is sufficient to fill in the gaps. It emphasizes that Loza-Romero had done certain favors for Vargas over the course of several years; however, it fails to explain how these favors show that Loza-Romero knew about Vargas's drug conspiracy. For example, the fact that Loza-Romero permitted Vargas to list his address on a Customs document says nothing about whether Loza-Romero knew about Vargas's drug conspiracy; indeed, there is no indication that the misrepresentation was associated with Vargas's drug activities at all. Likewise, the fact that Loza-Romero allowed Vargas to store some piping material at his house merely begs the question whether Loza-Romero knew what Vargas used the piping for. And Loza-Romero's allowing Vargas to list him as a contact for some self-storage units, which may have been used to store smuggling materials, also merely begs the question whether Loza-Romero knew what the storage units were being used for. When evidence is "wholly susceptible to innocent explanations," the government must submit " 'sufficient probative facts' " to enable the factfinder to choose built over innocence. United States v. Wiseman, 25 F.3d 862, 856-67 (9th Cir.1994) (quoting United States v. Bishop, 959 F.2d 823, 830 (9th Cir.1992)); United States v. Bautista-Avila, 6 F.3d 1360, 1363 (9th Cir.1993). Here, each of the factors the majority points to is wholly susceptible of an innocent explanation and is insufficient to provthat Loza-Romero knew about Vargas's drug conspiracy.
 
 
 45
 Finally, the majority notes that Loza-Romero appeared to have a guilty conscience at the time of his arrest because he fled and because he made false statements. While guilt sometimes may be inferred from such "guilty conscience" evidence, courts have often warned of its "inherent unreliability." United States v. Myers, 550 F.2d 1036, 1050 (5th Cir.1977). The probity of "guilty conscience" evidence depends on whether an inference of complicity is appropriately drawn in the circumstances. See, e.g., United States v. Felix-Gutierrez, 940 F.2d 1200, 1207 (9th Cir.1991) (enumerating four preliminary inferences that must be possible, before the ultimate inference of guilt can be made); see also United State v. Harris, 792 F.2d 866, 869 (9th Cir.1986) (approving a conviction where the guilty conscience evidence was supplemented by other evidence and noting that "the jury's verdict was not based solely on the flight evidence").
 
 
 46
 Here, where the other evidence against Loza-Romero consisted of nothing more than weak inferences from neutral facts, and where the drugs were well-disguised before they came into his possession, Loza-Romero's attempted flight and false statements are insufficient to show knowledge beyond a reasonable doubt. See, e.g., United States v. Ramos-Rascon, 8 F.3d 704, 710 (9th Cir.1993) ("Mere presence coupled with flight is not sufficient evidence to sustain a conspiracy conviction"); United States v. Lopez, 625 F.2d 889, 896-97 (9th Cir.1980) (knowledge not shown where defendant spent day with drug dealer, fled when police approached, and told police he would never have been caught but for a bad leg; more needed)
 
 
 47
 In sum, the government's evidence is insufficient to prove beyond a reasonable doubt that Loza-Romero was a knowing participant in Vargas's drug conspiracy. Rather, it is entirely susceptible of an innocent explanation; namely, that Loza-Romero did a favor for Vargas on the wrong day and was unwittingly duped into momentary contact with cleverly-disguised drugs. More is needed before a defendant can be convicted of knowing participation in a conspiracy.
 
 B. Contreras-Rodriguez
 
 48
 The majority relies on six items of circumstantial evidence to show that the Contreras-Rodriguez was a knowing participant in Vargas's drug conspiracy: (1) he was present when the drugs arrived at California Auto, (2) lie took possession of the drugs when they arrived, (3) he was the supervisor at California Auto, (4) he had a "relationship" with Vargas, (5) he attempted to evade police when they came to California Auto, and (6) he lied to police. Under the circumstances of this case, this evidence is insufficient to show knowledge beyond a reasonable doubt.
 
 
 49
 As discussed in Part I.A, above, mere proximity is never enough, Ocampo, 937 F.2d at 489; Ramirez, 880 F.2d at 239, and inferring knowledge from possession is especially inappropriate here because there is no danger that it was defendant who disguised the drugs so that he could feign innocence.
 
 
 50
 The other evidence to which the majority points is equally inadequate. For example, the majority emphasizes that Contreras-Rodriguez was "in control" of California Auto when the drugs were delivered, but fails to show how knowledge can be inferred from this control. It is undisputed that Contreras-Rodriguez ran California Auto's legitimate, day-to-day business; he dealt with California Auto's customers, dealt with the landlord, paid the rent, made bank deposits, worked in the office, greeted delivery people, and did the shop's legitimate upholstering work. It is not surprising, then, that he supervised the receipt of packages shipped to California Auto, including the packages involved in this case. But the fact that Contreras-Rodriguez supervised the receipt of packages does not demonstrate that he knew what was in them. The packages were cleverly disguised, were not opened at California Auto, and were held there for only a short time before being moved. This evidence does not show that Contreras-Rodriguez knew about the dark side of the business--use of California Auto as a waystation for drugs.
 
 
 51
 The majority also points to Vargas's listing of California Auto as a contact on two self-storage rental contracts. It characterizes this as evidence of a "relationship" between Contreras-Rodriguez and Vargas. Such evidence is wholly inadequate to show knowledge: "inferences arising from keeping bad company are not enough to convict a defendant for conspiracy." Ramos-Rascon, 8 F.3d at 711. This evidence establishes no more than that Vargas expected someone it California Auto to relay messages from the self-storage company to him. It does not suggest that the person who relayed the messages would have to know their real significance. Further, there is no evidence that Vargas even expected Contreras-Rodriguez to relay any messages; in fact, another Vargas associate also spent his days at California Auto.
 
 
 52
 All that is left then, is evidence suggesting Contreras-Rodriguez had a guilty conscience--namely, that he attempted to evade police and that he lied to them. In this context, however, this evidence is simply insufficient to sustain a finding of knowing participation in a conspiracy. Although such evidence can sometimes support an inference of knowledge, it is "inherently unreliable," Myers, 550 F.2d at 1050, and its probative value depends upon the circumstances. See, e.g., Felix-Gutierrez, 940 F.2d at 1207; Harris, 792 F.2d at 869. Here, where the evidence against Contreras-Rodriguez consisted of no more than weak inferences from circumstances consistent with innocence, and where the drugs were well-disguised, evasive conduct is insufficient to prove knowledge beyond a reasonable doubt. See id.; Ramos-Rascon, 8 F.3d at 710; Lopez, 625 F.2d at 896-97.
 
 
 53
 In sum, the government's evidence is insufficient to prove knowing participation. The government's evidence shows no more than that Contreras-Rodriguez was a legitimate employee of a business that engaged in both legitimate and illegitimate commerce, and that he unwittingly lent his labor to a drug conspiracy which he knew nothing about. More is needed before he can be convicted of conspiracy.
 
 
 54
 II. Failure to Instruct on the Presumption of Innocence
 
 
 55
 Because the jury instructions as a whole failed to fulfill the purposes of the presumption oe innocence instruction, due process was violated. Failure to give a presumption of innocence instruction is reversible error when the instructions as a whole do not fulfill the dual purposes of the presumption of innocence instruction--emphasizing that the burden of proof beyond a reasonable doubt is on the government, and cautioning the jury to rely only on evidence introduced at trial, rather than being influenced by official suspicion. United States v. Payne, 944 F.2d 1458, 1465-66 (9th Cir.1991).
 
 
 56
 In Payne, a number of factors compensated for the failure to give the presumption of innocence instruction. Id. at 1466-68. However, many of the Payne factors are missing here. For example, unlike Payne, id. at 1467, the jury here was never instructed, during voir dire or otherwise, that the defendant must always be presumed innocent. This is an important difference; in nearly every case upholding a failure to instruct on the presumption of innocence, the court had told the jury of the presumption of innocence at some time during the proceedings. See, e.g., id.; United States v. Solomon, 856 F.2d 11572, 1576 (9th Cir.1988) (instruction at beginning of trial); United States v. Witt, 648 F.2d 608, 609-10 (9th Cir.1981) (Court instructed jury that defendant "is presumed by law to be innocent "--defendant wanted further definition)
 
 
 57
 Further, unlike Payne, defendant Contreras-Rodriguez did not testify. As Payne recognized, the presumption of innocence is particularly important when a defendant exercises his right to remain silent because the temptation to infer guilt is especially strong in such cases. 942 F.2d at 1467 n. 8. Finally, while Payne emphasized that "the fact that the weight of the evidence in this case was considerable also militates in favor of finding that the failure to instruct was harmless," id. at 1467, here, the evidence against defendants was weak. Indeed, the jury itself considered the evidence close, having that reached an impasse at one point. Thus, the failure to instruct on the presumption of innocence in this case was more egregious than in Payne.
 
 
 58
 The other factors the majority points to offer little support. For example, the majority notes that the defense counsel discussed the presumption of innocence, and the prosecutor acknowledged the government's burden of proof. "Arguments of counsel," however, "cannot substitute for instructions by the court," for they have neither the authority nor the credibility of the court behind them. Taylor v. Kentucky, 436 U.S. 478, 489 (1978). Likewise, the trial court's statement during voir dire that the indictment was not evidence is a far cry from a straightforward statement that guilt should not be inferred from official suspicion. Compared to the instructions in Payne, where the court repeatedly explained the presumption of innocence itself during voir dire, the indictment instruction here is an inadequate statement of the rule regarding official suspicion. 944 F.2d at 1467.
 
 
 59
 In sum, because the trial court failed to give any kind of presumption of innocence instruction at any point during the proceedings, in a case where one of the defendant did not testify, and because the evidence in this case was, at best, a tenuous collection of inferences from circumstances compatible with innocence, the trial court's failure to give a presumption of innocence instruction was not harmless. The dual purposes served by the presumption of innocence instruction were not met.
 
 
 60
 For these reasons, I would reverse the conviction and respectfully dissent.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or used by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 The defendant oddly labels this instruction; it actually never addresses knowing possession
 
 
 [1]
 Similarly packaged drugs had passed through Customs 10 times without arousing suspicion